In re FOLDING CARTON ANTITRUST LITIGATION.

No. MDL 250.

United States District Court, N. D. Illinois, E. D.

Feb. 16, 1979.

Perry Goldberg, Chairman, Plaintiffs' Executive Committee, Specks & Goldberg, Ltd., James B. Sloan, Plaintiffs' Coordinating Secretary, Sloan & Connelly, Chicago, Ill., for plaintiffs.

John J. McHugh, Chairman, Defendants' Executive Committee, Chadwell, Kayser, Ruggles, McGee & Hastings, Donald G. Kempf, Jr., Co-Chairman Defendants' Executive Committee, Kirkland & Ellis, Roger B. Harris, Defendants' Coordinating Secretary, Altheimer & Gray, Chicago, Ill., for defendants.

Thomas D. Decker, Cummins, Decker & Webb, Chicago, Ill., for Richard S. Longnecker.

Matthias A. Lydon, Chicago, Ill., for James R. McNevins and Alexander K. Pasternack.

Raymond W. Bergan, Williams & Connolly, Washington, D. C., for Michael Edward Noonan.

James L. Magee, Sax & MacIver, Seattle, Wash., for George Sutch.

Joseph M. Gensheimer, D. Bruce Pearson, U. S. Dept. of Justice, Antitrust Div., Washington, D. C., for the U. S.

Raymond J. Smith, Chicago, Ill., for Richard Hill.

S. Jack Micheletto, George J. Cotsirilos & Assoc., Ltd., Chicago, Ill., for Dario Lencioni.

Before ROBSON, Senior District Judge and WILL, District Judge.

## PRETRIAL ORDER NO. 41

### MEMORANDUM OPINION

On February 24, 1978, plaintiffs filed motions to compel the deposition testimony of Eugene Blankenheim, Richard Hill, Richard Longnecker, James McNevins, Michael Noonan, Alexander Pasternack, Robert Stuberg, and George Sutch. On March 17, 1978, plaintiffs filed additional motions to compel the deposition testimony of Clarence Gene DeRocher and Dario Lencioni. Plaintiffs previously had taken the depositions of each of these witnesses, and, in response to many of their specific questions, had received assertions of the witnesses' fifth amendment privilege.[1]

Plaintiffs have advanced several arguments in support of their motions to compel the deposition testimony of these witnesses over their claims of fifth amendment privilege. First, plaintiffs contend that none of the witnesses has a "reasonable cause to fear danger" from answering the deposition questions. Second, plaintiffs contend that the prior grant of immunity to Hill, Lencioni, Longnecker, Noonan, and Sutch for their grand jury testimony would, in the circumstances of this case, "taint" any subsequent deposition testimony, thus enabling this Court to compel their depositions. Third, plaintiffs contend that witness Pasternack, by the answers which he gave at his deposition prior to raising his fifth amendment claim, "waived" his right to assert the fifth amendment privilege.[2] Finally, in the event that this Court does not compel the deposition testimony of witnesses Hill, Lencioni, Longnecker, Noonan, and Sutch, plaintiffs have moved, in the alternative, for this Court to order the production to the plaintiffs of the grand jury testimony of these witnesses.

For the reasons hereinafter stated, we grant plaintiffs' motions to compel the deposition testimony on the ground that none of these witnesses has a sufficient fear of prosecution to invoke his fifth amendment privilege. We reject, however, plaintiffs' argument that the prior immunity grants to Hill, Lencioni, Longnecker, Noonan, and Sutch would "taint" any subsequent deposition testimony. In light of our granting plaintiffs' motions to compel, we need not reach the issue of Pasternack's "waiver" of his fifth amendment privilege or plaintiffs' motion to secure the grand jury testimony in the alternative.

### I. Existence of a Reasonable Fear of Prosecution

These motions to compel present what we believe is an issue of virtual first impres-

---

1. Since the filing of these motions, Blankenheim, DeRocher, and Stuberg received grants of immunity from the United States pursuant to 18 U.S.C. §§ 6001, *et seq.* Consequently, plaintiffs' motions to compel the deposition testimony of these three witnesses are moot.

2. Plaintiffs have also moved to compel the testimony of Hill, Longnecker, and Sutch over their refusals to answer based on attorney-client privilege, and to compel the testimony of McNevins and Pasternack as to individual questions where the refusal to answer was based on relevancy grounds. We do not consider these aspects of plaintiffs' motions in this opinion.

sion: do witnesses in a civil antitrust damages action alleging a conspiracy to fix prices have a reasonable fear of prosecution so as to invoke the fifth amendment privilege against self-incrimination where the United States Department of Justice has conducted and successfully completed a massive criminal investigation and prosecution of the same conspiracy and no apparent efforts have been made by any state or federal enforcement agency to undertake subsequent criminal prosecutions as to the conspiracy? We hold that, under the circumstances of this case, the witnesses who are the subjects of these motions to compel do not have a reasonable fear of prosecution.

The fifth amendment privilege against self-incrimination does not exonerate a witness from answering solely upon the witness' own estimation of whether his answers would tend to incriminate. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Rather, this Court must determine whether the witness' silence is justified, *id.,* and must make this determination upon the particular facts of this case. *Zicarelli v. New Jersey Investigation Commission,* 406 U.S. 472, 480, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972); *Ryan v. C. I. R.,* 568 F.2d 531, 539 (7th Cir. 1977); *United States v. Melchor Moreno,* 536 F.2d 1042, 1046–47 and 1050 n. 10 (5th Cir. 1976).

"It is well established that the privilege [against self-incrimination] protects against real dangers, not remote and speculative possibilities." *Zicarelli v. New Jersey Investigation Commission, supra,* 406 U.S. at 478, 92 S.Ct. at 1675 (footnote omitted). While the level of apprehension of a criminal prosecution required for a valid assertion of a witness' fifth amendment privilege has been variously stated, *see Priebe v. World Ventures, Inc.,* 407 F.Supp. 1244, 1245 (C.D.Cal.1976), the law in this circuit establishes that the privilege against self-incrimination "extends only to instances where the witness has reasonable cause to fear danger from answering the question." *Ryan v. C. I. R., supra,* 568 F.2d at 539.

There are several inquiries which a court must make to determine whether a witness, when asked specific questions, has a reasonable fear of prosecution as a result of the answers which would be given. First, the court must determine that the answers which would be given might, in fact, have a tendency to indicate a participation in criminal activities by the witness. A witness cannot refuse to answer harmless questions, the answers to which could in no way incriminate him. *Zicarelli v. New Jersey Investigation Commission, supra,* 406 U.S. at 480, 92 S.Ct. 1670; *United States v. Seewald,* 450 F.2d 1159, 1162 (2d Cir. 1971). Second, the court must determine that answers which might indicate participation in criminal activities could expose the witness to a theoretically possible prosecution. Thus, if prosecution is barred by the statute of limitations, a witness may not be able to assert the fifth amendment. *Brown v. Walker,* 161 U.S. 591, 598, 16 S.Ct. 644, 40 L.Ed. 819 (1895); *United States v. Goodman,* 289 F.2d 256, 260 (4th Cir. 1961). Third, assuming both that the answers might tend to incriminate the witness and that there exists the theoretical possibility of a criminal prosecution, the court must further determine that the threat of an actual prosecution is not a remote and speculative possibility. *See Zicarelli v. New Jersey Investigation Commission, supra,* 406 U.S. at 478, 481, 92 S.Ct. 1670.

The Department of Justice has previously successfully indicted and prosecuted a number of defendants other than the witnesses here for criminal violations of the Sherman Act. *See United States v. Consolidated Packaging Corporation,* 575 F.2d 117 (7th Cir. 1978). In addition, the five year federal statute of limitations, 18 U.S.C. § 3282, has not yet run with respect to the indictment which alleged that the criminal conspiracy had continued "until sometime prior to December 1974." *United States v. Alton Box Board Company, Inc., et al.,* 76 CR 199 (N.D.Ill.). Thus, we cannot say that any of the witnesses here subject to these motions would not, if compelled to answer the deposition questions, give answers which might tend to incriminate them under statutes for

which there exists a theoretical possibility of criminal prosecution. Assuming *arguendo* that these witnesses would give incriminating testimony if forced to testify, we believe that, under the circumstances of this case, the possibility of an actual prosecution of any of these witnesses is too remote and speculative to sustain the assertions of a fifth amendment privilege.

The criminal investigation, grand jury indictments, and prosecution of the folding carton antitrust conspiracy conducted by the Department of Justice was one of the largest and most exhaustive in the history of the enforcement of the United States' antitrust laws. In fact, at the close of the criminal trial, the government stated that the case involved the greatest number of defendants of any case in history which had ever been tried to a conclusion. *United States v. Consolidated Packaging Corporation, supra,* 575 F.2d at 119 n. 1. Indictments were procured against twenty-three folding carton companies and fifty individuals. Seventy defendants pleaded *nolo contendere* and were sentenced. Of the three defendants tried, two individuals were acquitted and one corporation, Consolidated Packaging, was convicted. As of this time, the United States' criminal prosecution with respect to the 1960–1974 conspiracy indictment is apparently complete. Moreover, the United States' civil damages action based on the same conspiracy, *United States v. Alton Box Board Company, et al.,* 76 C 1638, is also complete, having been settled and dismissed by stipulation of the parties on November 17, 1978.

■ Given this background of an exhaustive, *completed* criminal investigation, we believe several additional factors indicate that none of these witnesses has a reasonable fear of an actual prosecution. First, while the federal statute of limitations on the originally indicted conspiracy will not run until later this year, there is absolutely no indication that any federal prosecutorial authority has conducted, is conducting, or contemplates an investigation aimed towards producing new indictments against any potential defendant in the folding carton industry prior to the limitations expiration not later than December 1979.[3] In fact, the United States' brief with respect to these motions to compel, while concluding that each of the witnesses has "a reasonable fear of prosecution," at no point mentions any possible subsequent federal criminal prosecution. The only possible prosecutions specifically referred to are state prosecutions. *See* Government's Brief at 4 and 7.

Second, we find absolutely no indication that any state prosecutorial authority has any present interest in criminally charging these witnesses or any other potential defendants for the price-fixing conspiracy charged in the original indictment. As an initial matter, we are confident that the statutes of limitations have run with respect to possible criminal sanctions in most states. *See, e. g.,* Ill.Rev.Stat. ch. 38, § 60–6(2) (four years). As to those states with currently unexpired statutes of limitations, *see, e. g.,* Colo.Rev.Stat. § 6–4–104 (six years), we find the likelihood of any state at this late date having the resources, time and interest to initiate an investigation and prosecution of these witnesses to be "trifling" at best. *Marchetti v. United States,* 390 U.S. 39, 53, 88 S.Ct. 697, 19 L.Ed.2d 889 (1968).

■ Third, the fact that five of these witnesses previously gave immunized testimony before the federal grand jury which returned the original indictments argues strongly against any present ability on the part of the federal government to indict and convict them. While it is clear that a grant of immunity pursuant to 18 U.S.C.

<hr>

**3.** Several of the witnesses argued that compelled answers might also reveal "links in a chain of evidence" as to potential criminal liability for actions *after* November 1974, *i. e.,* which were not covered in the original indictment. We are not persuaded by this argument, particularly in light of the facts that (1) it is highly improbable that the price fixing conspiracy was continued in 1975 while the government's criminal investigation was progressing, and (2) after its extensive research, the government set the "prior to December 1974" cutoff for its indictment and never sought leave to file a superseding indictment.

§ 6002 does not confer "transactional" immunity and that a person having given immunized testimony may, nonetheless, be prosecuted, *see, e. g., United States v. Thanasouras,* 368 F.Supp. 534 (N.D.Ill.1973), courts have been scrupulous to insure that there has been no impermissible "derivative use" of a witness' immunized testimony in a subsequent prosecution. *See, e. g., United States v. Kurzer,* 534 F.2d 511, 517 (2d Cir. 1976), *on remand,* 422 F.Supp. 487 (S.D.N.Y. 1976); *United States v. McDaniel,* 482 F.2d 305, 311 (8th Cir. 1973); *United States v. Dornau,* 359 F.Supp. 684 (S.D.N.Y.1973). As a practical matter, we find it inconceivable to imagine at this late date a federal prosecution against Hill, Lencioni, Longnecker, Noonan, or Sutch which would not be subject to attack on the grounds of impermissible "taint". Certainly, if the federal prosecutors had gathered "independent, legitimate" evidence which could be used to secure an indictment of these witnesses, they could have prosecuted them along with the initial group of 50 individual defendants. Particularly in light of the inherent factual complexity and interrelated nature of an antitrust conspiracy prosecution, the possibility that the government could sustain its "heavy" burden, *Kastigar v. United States,* 406 U.S. 441, 461, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), of proving an untainted prosecution is extremely remote. Of course, if an independent state prosecution of any of these witnesses were underway, there might be a lesser inherent likelihood of impermissible "taint". *United States v. First Western State Bank,* 491 F.2d 780, 783 (8th Cir. 1974). Nonetheless, state prosecutors would still be required affirmatively to prove that their evidence came from independent sources. *United States v. Nemes,* 555 F.2d 51, 55 (2d Cir. 1977). In any event, we have already found the possibility of any such subsequent state prosecution to be remote.

In reaching our decision that these witnesses do not have a reasonable fear of prosecution, we recognize that courts have historically been unwilling to override claims of fifth amendment privilege solely on the ground that, as a practical matter, there exists only a minimal possibility that the witness would actually be prosecuted. *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir. 1974); *United States v. Johnson,* 488 F.2d 1206, 1209 n. 2 (1st Cir. 1972); *United States v. Seavers,* 472 F.2d 607, 610–11 (6th Cir. 1973); *United States v. Miranti,* 253 F.2d 135, 139 (2d Cir. 1957); *United States v. Ward,* 314 F.Supp. 261, 263–64 (E.D.La.1970).

Several of the courts which have rejected overriding a claim of fifth amendment privilege solely on the ground that there was a minimal actual possibility of prosecution have done so in language which indicates they would *never* consider the practical possibility of a prosecution in the context of a claim of fifth amendment privilege. *United States v. Johnson, supra,* 488 F.2d at 1209 n. 2; *United States v. Miranti, supra,* 253 F.2d at 139; *State of Illinois v. W. J. Shepperd and Company,* No. S–Civ–76–0018 (S.D.Ill. March 1, 1978). We do not, however, follow these courts for we believe they have erroneously reconciled the recognized power of both the state and federal governments "to compel residents to testify in court or before grand juries or agencies," *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), with the fifth amendment privileges of the witnesses. Where there exists a merely theoretical possibility that a witness will be prosecuted, the fifth amendment does not require that the witness be excused from his duty to testify. Rather, in such circumstances, a witness' fifth amendment rights are fully protected by our holding *infra* that, in the remote event of a subsequent prosecution, compelled answers given after a court's finding of no reasonable fear of prosecution cannot be used in any way in any subsequent prosecution.

Whatever may be the law in other circuits, the Seventh Circuit recently implicitly accepted a court's authority to evaluate the practical likelihood of a subsequent prosecution. In *Ryan v. C. I. R., supra,* two taxpayers appealed from an order of the Tax Court holding them in contempt for refusing to answer seven interrogatories pro-

pounded by the Commissioner of Internal Revenue. On appeal, the taxpayers argued that the Tax Court had erred in rejecting their claim there was a reasonable danger of self-incrimination since that court, allegedly, had overlooked several factors in its determination that the likelihood of further prosecution was too remote. Among the factors were the taxpayers' claims that, while the statute of limitations had run for criminal tax prosecutions, there was a continuing possibility that the taxpayers might be prosecuted for other criminal acts with unexpired statutes of limitations. While the court ultimately decided this issue on the ground that the taxpayer had received a valid grant of immunity, the court did note that "these possibilities of prosecution still appear to be remote," 568 F.2d at 539, and at no point questioned the Tax Court's authority to make an evaluation of the practical likelihood of a subsequent prosecution.

Obviously, assessing the practical possibility of a subsequent prosecution is difficult since it requires a prediction of how both state and federal prosecutors will exercise their discretion. *United States v. Miranti, supra,* 253 F.2d at 139. We do not believe, however, that the difficulty of making such an assessment in the ordinary case precludes this Court from making such an assessment and determining, in this case, that these witnesses do not have a "reasonable fear of prosecution" since the practical likelihood of their being prosecuted is virtually nonexistent.[4]

Nor do we believe, as apparently have some courts, *see United States v. Miranti, supra,* 253 F.2d at 139, that the only solution to this problem lies in securing binding commitments not to prosecute from each of the potential prosecuting authorities. While securing such commitments may be a preferable mode of procedure in cases of limited geographical scope, *see In re Arizona Dairy Products Litigation,* Civ. 74–569 (D.Ariz. November 23, 1977), such a procedure would be impractical in the factual setting of a nationwide conspiracy as was allegedly involved in the folding carton industry. In the context of the alleged antitrust conspiracy before us, it is incumbent upon this Court to determine whether, without such commitments, there remains a "real danger" of prosecution. *Zicarelli v. New Jersey Investigation Commission, supra,* 406 U.S. at 478, 92 S.Ct. 1670. For the reasons set forth above, we hold that none of these seven witnesses has a "reasonable fear of prosecution." *Ryan v. C. I. R., supra,* 568 F.2d at 539.

Granting plaintiffs' motions to compel over these witnesses' assertions of the fifth amendment privilege in no way jeopardizes their privilege against self-incrimination. In the unlikely event that a subsequent prosecution is initiated by either state or federal authorities for the activities which were charged and proven as to other defendants for the pre-December 1974 period in the original federal indictment, any use or derivative use of any incriminating testimony given in the compelled deposition answers in a subsequent criminal proceeding would be impermissible.[5] Contrary to the

---

**4.** Efforts to override claims of fifth amendment privilege on the ground that there was no practical possibility of prosecution have been rejected by some courts in language which indicates that a showing of a "slight possibility" of a prosecution is enough to find a reasonable fear of prosecution, *see In re Master Key Litigation, supra,* 507 F.2d at 293; *United States v. Ward, supra,* 314 F.Supp. at 264, without specifically considering whether a merely theoretical or speculative possibility of a prosecution would be sufficient. We need not deal with these cases or the propriety of the "slight possibility" standard at length, for, in this case, we have concluded that the practical threat of an

actual prosecution does not amount even to a "slight possibility."

Of such cases, only *In re Master Key Litigation* presents a factual situation somewhat analogous to this case. However, *In re Master Key Litigation* is clearly distinguishable since, in that case, there was no history of an exhaustive, massive, *completed* criminal investigation and prosecution, as there is here.

**5.** The potential for any impermissible or derivative use of the compelled deposition answers can be minimized by requiring the compelled deposition answers to be filed under seal until the time of trial, and to be subject to an appro-

suggestion of several of the witnesses and the government that any testimony given in a court-compelled deposition would constitute "independent, legitimate evidence" within the scope of *Kastigar v. United States, supra*, 406 U.S. at 460, 92 S.Ct. 1653, and be fairly admissible in a subsequent prosecution, we believe that the witness must be protected from any use or derivative use of the testimony contained in his compelled answers. The fifth amendment would not condone any contrary result: just as is the case with respect to a grant of "use" immunity under 18 U.S.C. § 6002,

> [A] . . . witness may not be compelled to give testimony which may be incriminating under federal law unless the compelled testimony and its fruits cannot be used in any manner by . . officials in connection with a criminal prosecution against him.

*Kastigar v. United States, supra*, 406 U.S. at 457, 92 S.Ct. at 1663 (citing *Murphy v. Waterfront Commission*, 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964)). Certainly, an order enforceable by contempt sanctions compelling these seven witnesses to testify on the ground that, as a practical matter, they have no reasonable fear of prosecution from incriminating answers is a "compelling" of testimony within the above language.[6]

■ Granting the motions to compel does not, in our opinion, constitute an impermissible judicial grant of immunity. Under 18 U.S.C. §§ 6001, *et seq.*, the power to grant immunity clearly lies exclusively with the Executive. *Ryan v. C. I. R., supra*, 568 F.2d at 540. Moreover, we have no inherent authority to grant immunity to these witnesses apart from the statute. *See Ellis v. United States*, 135 U.S.App.D.C. 35, 40–41, 416 F.2d 791, 796–97 (1969).

Granting the motions to compel does not, however, constitute an immunity grant. This Court's decision is exclusively premised on a judicial determination that, as a practical matter, there is solely a theoretical and no actual possibility that these witnesses could be prosecuted for any activities with respect to which they might testify. Our decision is in no way based on an evaluation of the advisability, fairness, or wisdom of any prosecution of any of these seven. *Compare In Re Daley*, 549 F.2d 469, 479 (7th Cir. 1977). Moreover, unlike an immunity grant which is premised upon the witness' participation in criminal activity and reasonable fear of prosecution, here there is the absence of any real threat of prosecution.

■ Finally, strong policy considerations support the result reached here. Federal and state criminal statutes have an expansive and omnipresent sweep in modern society. There are a multitude of situations where potential criminal and civil liability overlap. Sustaining a civil witness' refusal to testify on fifth amendment grounds every time an answer might give rise to some theoretically possible future criminal prosecution, no matter how remote, would signal a virtual end to discovery in civil cases. Assertions of the fifth amendment which, as a practical matter, are frivolous should not be allowed to frustrate discovery in civil cases.

Accordingly, we grant plaintiffs' motions to compel the depositions of these seven witnesses.

## II. *"Taint" from Prior Immunized Grand Jury Testimony*

In light of our finding that none of the seven witnesses has a reasonable fear of prosecution so as to invoke the fifth amendment, we need not reach plaintiffs' second

---

priate protective order to be drafted by the parties.

**6.** *United States v. Kuehn*, 562 F.2d 427 (7th Cir. 1977), is not to the contrary. In *Kuehn*, the court solely in dicta indicated that statements made by a witness to a news reporter "for the record," after having given immunized testimony before the grand jury, were outside the

scope of the immunity grant and, hence, "independent evidence" admissible in a subsequent criminal prosecution. 562 F.2d at 432. Nothing in *Kuehn* supports the proposition that testimony compelled by court order over a witness' assertion of the fifth amendment could be used in a subsequent prosecution.

ground for compelling the depositions of witnesses Hill, Lencioni, Longnecker, Noonan, and Sutch. Since a finding for plaintiffs on this ground would also support the conclusion reached above, however, we believe it important to consider the novel arguments raised by plaintiffs as to the scope of the previous immunity grants. .

Witnesses Hill, Lencioni, Longnecker, Noonan and Sutch all received grants of immunity from the United States pursuant to 18 U.S.C. §§ 6001–6003, and testified during 1974–75 at the grand jury inquiry into alleged criminal antitrust violations in the folding carton industry. Notwithstanding these immunity grants, each of these witnesses at the depositions taken by plaintiffs in this civil antitrust action has asserted his fifth amendment privilege. None of them, unlike numerous other witnesses who also testified under grants of immunity at the grand jury, has received a new grant of immunity from the United States specifically with respect to his deposition in these civil proceedings.

Plaintiffs contend that, assuming *arguendo* these witnesses otherwise have a "reasonable fear of prosecution," Hill, Lencioni, Longnecker, Noonan, and Sutch are protected, under the peculiar circumstances of this case, by the grants of immunity given to them for their grand jury testimony. The witnesses and the government argue, however, that the prior grants of immunity do not extend to these civil depositions, and that to do so would violate the clear intent of 18 U.S.C. §§ 6001, *et seq.*, both (1) to limit the scope of the immunity grant to "use" immunity and (2) to limit the power to grant immunity exclusively to the Executive. Moreover, they note that, for the Court to grant the motions to compel on this ground, would be contrary to the United States' current policy of seeking specific immunity grants with respect to each proceeding at which the witness testifies.

Plaintiffs' contention raises a question of first impression so far as this Court can determine under 18 U.S.C. § 6002. Evalua-

tion of the merits of plaintiffs' argument must begin with an analysis of 18 U.S.C. §§ 6001, *et seq.* Two fundamental policies are embodied in that statutory structure. First, the statute mandates that the power to grant immunity lies exclusively with the Executive. *See supra*, at 17. Second, 18 U.S.C. §§ 6001, *et seq.*, mandate a grant of "use" immunity, rather than the broader "transactional" immunity of the previous immunity statute. Section 6002 provides, in pertinent part:

> [N]o testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case . . . . .

and was enacted as a portion of the Organized Crime Control Act of 1970 in an effort to narrow the scope of immunity given under the prior transactional immunity statute, 18 U.S.C. § 2514 (1970). *See, e. g.*, H.R.Rep. No. 91–1549, 91st Cong., 2d Sess., *reprinted in*, [1970] U.S.Code Cong. & Admin.News, pp. 4007, 4018.

■ A grant of immunity under § 6002 provides the immunized witness with substantial protection. Such a grant "bar[s] the use of the compelled testimony as an 'investigatory lead,' and also bar[s] the use of any evidence obtained by focusing investigation on a witness as a result of his compelled disclosures." *Kastigar v. United States, supra*, 406 U.S. at 460, 92 S.Ct. at 1665 (footnote omitted). It also places an affirmative burden upon the government to prove, in any subsequent prosecution, that "the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* Nonetheless, we cannot compel testimony so as essentially to transform the "use" immunity granted to a witness into a grant of "transactional" immunity. *See United States v. Kuehn*, 562 F.2d 427, 432 (7th Cir. 1977).

■ Reduced to its essential elements,[7] plaintiffs' claim is that because (1) these

7. Since the plaintiffs filed these motions to compel the deposition testimony of Hill, Len-

cioni, Longnecker, Noonan, and Sutch, the United States has settled its civil action against

five witnesses were selected for deposition in part as a result of their appearance before the grand jury, (2) the government and the plaintiffs' counsel cooperated in the taking of the depositions of some 30–40 immunized witnesses,[8] and (3) the government has been represented in the civil proceedings by the same counsel as conducted the grand jury and criminal trial, this Court must find "taint."

The first of these factors, by itself, would clearly be insufficient to make a prospective determination of "taint." In *United States v. Kuehn, supra,* the Seventh Circuit in *dicta* considered whether statements made by an immunized grand jury witness to a news reporter "for the record" immediately after his appearance before the grand jury were "independent, legitimate evidence" within the meaning of *Kastigar.* The court stated that such statements were independent evidence: they "could not have been derived from Schwartz' immunized grand jury testimony." 562 F.2d at 432. Implicitly, the court rejected the argument that the mere fact that the witness was selected for the news interview because of his appearance before the grand jury was enough to establish "taint." We agree with the Seventh Circuit's conclusion.

The third of the plaintiffs' factors we find irrelevant. To hold that there is a difference of legal consequence because one attorney from the government has participated in these civil cases rather than some other government attorney would be to elevate a formal difference far beyond its practical importance. We need not speculate here whether a different attorney for the United States could ever demonstrate that he had not had some manner of contact with the previously immunized testimony. *See United States v. King,* 560 F.2d 122 (2d Cir. 1977).

The second factor remains. Plaintiffs' theory of "taint" rests on the assumption that (1) by virtue of the immunized grand jury testimony of these five witnesses, the government gained certain information and leads which they would not otherwise have had, (2) the government "used" this information and leads in preparing the public criminal trial, in preparing those portions of the grand jury records of other witnesses which have been released pursuant to Pretrial Order Number 18, and in taking the civil depositions of the 30–40 immunized witnesses jointly with the plaintiffs in these cases, (3) having participated in these joint depositions and having access to certain other government information, the plaintiffs now possess information and leads *derived* from the government's "use" of the immunized testimony, and (4) plaintiffs' possession of this information would render *any* deposition testimony "tainted" within the derivative use ban of *Kastigar.*

the defendants. As a result, it is clear that plaintiffs can no longer assert the government's participation in the depositions to be compelled as a factor justifying compulsion.

The fact that the government settled its case does not change the merits of plaintiffs' motions. Plaintiffs' original argument, that the government would participate in the compelled depositions and would use the prior immunized grand jury testimony of these very witnesses in framing the topics covered and the questions asked, was fallacious for it assumed the very "taint" which plaintiffs sought to demonstrate. We are aware of no deposition, even after the entry of Pretrial Order Number 26 coordinating the government's civil damage action with the plaintiffs' private antitrust claims, where the government participated in the deposition of a witness whose situation was like that of these witnesses. Moreover, the grand jury testimony of these witnesses has not been released to the plaintiffs, nor has the government authorized immunity for any of these five witnesses, while it has authorized immunity for some 30–40 other witnesses. For this Court to have relied on the government's *actual* participation at the deposition as a factor compelling the deposition would have been "a circular, self-fulfilling prophecy that in substance can only be viewed as a grant of immunity." *Ellis v. United States, supra,* 135 U.S.App.D.C. at 39, 416 F.2d at 796.

**8.** The precise number of such depositions is not certain. As of September 15, 1978, the government stated that 30 witnesses had been jointly deposed under immunity grant. More recently, it appears that there were 43 such depositions. *See* Memorandum of Certain Defendants in Support of Preliminary Approval of Proposed Settlements, at 16. We do not perceive any significant difference between 30 and 43 jointly conducted immunized depositions.

We recognize that plaintiffs' argument does set forth a bona fide possibility of impermissible derivative use. We cannot say that the government has not in some sense "used" the information gained from the compelled grand jury testimony of these witnesses to formulate the questions which it, in conjunction with plaintiffs, asked at the depositions taken in this case of some 30–40 immunized witnesses. Nor can we say that plaintiffs, by virtue of having worked with the government on the immunized depositions already taken and on other matters, have not in some sense become privy to the fruits of the government's "use" of this information. Thus, there exists the theoretical possibility that the questions which plaintiffs formulated at the depositions of these witnesses were based on information gained from the government's derivative "use" of their immunized grand jury testimony.

Notwithstanding this theoretical possibility of "taint," we need not consider this case as if it were before us after indictment of these five witnesses with the government endeavoring to use the witnesses' statements in the civil deposition to secure a criminal conviction. Plaintiffs seek a *prospective* determination that the future deposition testimony will be tainted, and thus seek to compel the deposition. This we will not do.

As an initial matter, the authority of a district court to compel civil discovery over a claim of fifth amendment privilege on the ground that the testimony given pursuant to a prior immunity grant would "taint" any such discovery is not settled. Plaintiffs have cited only one case, *Patrick v. United States,* 524 F.2d 1109 (7th Cir. 1975), which suggests that this Court can make such a determination.

In *Patrick,* the plaintiff, Patrick, sought to secure the suppression of the testimony which he had given to the grand jury pursuant to an immunity grant under 18 U.S.C. § 6002. After the giving of the immunized testimony, the government had used his testimony to calculate and issue a jeopardy tax assessment against him. Patrick ar-

gued that the government's issuance of the jeopardy assessment, which forced him as a taxpayer to resort to a refund suit in order to challenge *the amount* of the assessment, placed an impermissible burden on his fifth amendment rights. The Seventh Circuit found Patrick's contention meritless on several grounds, including doubt on their part that a jeopardy assessment was distinguishable from any other civil burden facing a citizen which could only be rebutted by a disclosure of criminal conduct. 524 F.2d at 1120. The court further reasoned that, even if Patrick were forced "to testify against himself in a subsequent refund case," he would be protected because any testimony he gave would be "indirectly derived" from his compelled testimony under *Kastigar. Id.* The logic of this second leg of *Patrick* suggests that it may be proper for this Court, in the face of these witnesses' claims of fifth amendment privilege, to make a prospective determination whether there would be any violation of their fifth amendment rights by certain uses of their immunized testimony.

Assuming *arguendo* that *Patrick* gives us authority to make the prospective determination which plaintiffs seek, the *Patrick* decision certainly does not compel us to grant plaintiffs' motions as to Hill, Lencioni, Longnecker, Noonan and Sutch. In *Patrick,* it was clear that Patrick's later testimony would be elicited "only because the government could use the grand jury testimony as a basis for assessment." 524 F.2d at 1120. Here, plaintiffs have not had access to the witnesses' grand jury testimony: the questions plaintiffs have asked are not based on the immunized testimony, but rather on the much broader discovery which has occurred in this civil case. Furthermore, we believe it would be an abuse of *Patrick* and of this Court's discretion to grant the motions to compel on this ground. As outlined above, the "taint" which plaintiffs can legitimately assert is extremely attenuated, amounting to, at best, a theoretical possibility. Indeed, the "taint" present here is only slightly greater than the "taint" arguments rejected by the Seventh Circuit in *Kuehn.*

Additionally weighing against plaintiffs' attenuated "taint" theory are the fundamental policies, already discussed, which underlie 18 U.S.C. § 6002. Barring this Court's order of a release of the immunized grand jury testimony to the plaintiffs prior to any compelled deposition, we could not prevent the civil depositions from covering topics and incidents far beyond the scope of the grand jury testimony. Even assuming that we ordered a release of the prior immunized testimony and confined plaintiffs to asking questions which were actually asked under the grand jury immunity grant, we could not prevent the deponent from testifying at greater length and detail about potentially incriminating transactions.

Thus, while in Part I of this opinion we have found no reasonable fear of prosecution, assuming *arguendo* an otherwise valid assertion of the fifth amendment by these witnesses, compelling deposition testimony would necessarily broaden the scope of the prior authorized immunity. Of course, if we did compel such testimony, the witnesses' immunity would necessarily be expanded. *See Ellis v. United States, supra,* 135 U.S.App.D.C. at 39–40, 416 F.2d at 795–96; *Rutherford v. United States,* 365 F.2d 353, 357 and n. 4 (9th Cir. 1966). Such an expansion of the witnesses' immunity would come at the plaintiffs' request, not the government's. Plaintiffs would essentially be in the position of granting immunity which is a result inconsistent with Congress' antitrust policy, *cf. United States v. Dunham Concrete Products,* 475 F.2d 1241, 1245 (5th Cir. 1973), and with congressional policy limiting the power to authorize grants of immunity to the Executive Branch. *Ryan v. C. I. R., supra,* 568 F.2d at 540. Under circumstances where the witnesses have "a reasonable fear of prosecution," compelling the deposition testimony of these five witnesses would essentially constitute an impermissible transformation of the limited "use" immunity grant envisioned under § 6002 into a "transactional" immunity grant. *See United States v. Kuehn, supra,* 562 F.2d at 432.

Finally, we note that plaintiffs' claim as to the existence of "taint" arises primarily from the coordination of discovery which occurred following this Court's order coordinating the government's civil damage action with plaintiffs' private antitrust claims. Coordination of complex litigation substantially assists the federal judiciary in maximizing the effective allocation of scarce judicial resources. It would be anomalous if a federal court now held that, as a result of coordination alone, federal and state authorities forfeited their power to prosecute criminal violations. Such a holding might well ring the death knell for future coordination of lengthy and complex litigation in cases, unlike the one before the Court, where a bona fide possibility of future criminal prosecution remains.

Accordingly, although we grant plaintiffs' motion to compel the deposition testimony in question, we reject plaintiffs' alternative theory in support of their motions to compel testimony of the previously immunized witnesses.

An appropriate order will enter.