620 F.2d 1086
 1980-2 Trade Cases 63,435
 In re CORRUGATED CONTAINER ANTI-TRUST LITIGATION.
Appeal of Charles J. FRANEY.
In re CORRUGATED CONTAINER ANTI-TRUST LITIGATION.
Appeal of Philip FLEISCHACKER.
In re CORRUGATED CONTAINER ANTI-TRUST LITIGATION.
Appeal of Alex HOPKINS.
 Nos. 80-1284, 80-1307 and 80-1338.
 United States Court of Appeals,
Fifth Circuit.
 June 19, 1980.
 
 Singleton & Singleton, Robert H. Singleton, Houston, Tex., for appellant in No. 80-1284.
 Michael W. Coffield, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., amicus curiae for Joseph Kurpiel.
 Harold C. Gaebe, Jr., Thompson, Walther, Gaebe & Frank, St. Louis, Mo., amicus curiae for Richard Hermann.
 Harold F. Baker, Howrey & Simon, Washington, D. C., for The Mead Corp.
 O'Brien, Carey, McNamara, Scheuneman & Campbell, Ltd., Barry T. McNamara, LaDonna Loitz Chuchro, Peter Petrakis, Chicago, Ill., for appellant in No. 80-1307.
 Hill & Ghiselli, Jerry G. Hill, Houston, Tex., for appellant in No. 80-1338.
 Wright & Patton, P. C., Houston, Tex., for plaintiffs Liaison Counsel.
 Mandell & Wright, Stephen D. Susman, Houston, Tex., for Chairman of Steering Committee.
 Baker & Botts, Houston, Tex., for defendants Liaison Counsel.
 Hutcheson & Grundy, Houston, Tex., for Sect. defendants Coordinating Committee.
 Butler, Binion, Rice, Cook & Knapp, Houston, Tex., for defendants Liaison Counsel for Non-Settling defendants Committee.
 Appeals from the United States District Court for the Southern District of Texas.
 Before TJOFLAT, FAY and FRANK M. JOHNSON, Jr., Circuit Judges.
 TJOFLAT, Circuit Judge:
 
 
 1
 Philip Fleischacker, Charles J. Franey, and Alex Hopkins bring these consolidated appeals from orders of the District Court for the Southern District of Texas holding them in civil contempt for invoking the fifth amendment privilege against self-incrimination and refusing to answer questions posed to them at civil depositions.[1] The court had instructed them to answer the questions, ruling that the fifth amendment right to remain silent was unavailable to them since their deposition testimony could not possibly be used against them in any future criminal proceeding. We vacate the orders holding Franey and Hopkins in contempt because we conclude that the court acted improperly in ruling that there existed no danger of self-incrimination. We must dismiss Fleischacker's appeal for lack of jurisdiction.
 
 
 2
 * Fleischacker, Franey, and Hopkins are non-party witnesses in In re Corrugated Container Antitrust Litigation, M.D.L. No. 310, a private, multidistrict, antitrust action. That litigation was set on foot by a two-year federal grand jury investigation of allegations of price-fixing in the corrugated paper container industry. The grand jury investigation resulted in felony indictments against nine manufacturers of corrugated products and nine individuals and misdemeanor indictments against an additional five manufacturers and seventeen individuals. There followed a criminal trial in the district court for the Southern District of Texas. A jury acquitted those defendants who stood trial of all charges.
 
 
 3
 Fleischacker and Hopkins both testified before the grand jury after the district court, acting on the Government's petition, had entered an order granting them "use" immunity pursuant to 18 U.S.C. §§ 6001-6003 (1976) (immunity statute). Although Franey was not subpoenaed to appear before the grand jury, he submitted to an interview with Department of Justice attorneys in exchange for a letter from the Department of Justice promising that any information he revealed would not be used against him in any criminal proceeding. The Government transcribed the Franey interview and presented it to the grand jury. During the criminal trial, the Government called Franey and Hopkins as witnesses. They testified after the prosecutor obtained orders granting them statutory use immunity.
 
 
 4
 While the grand jury investigation and the subsequent criminal trial were in progress, purchasers of corrugated products filed forty-four class and eleven non-class treble damages actions against corrugated product manufacturers, some of which were indicted by the grand jury. The plaintiff purchasers alleged that the defendants had engaged in a nationwide conspiracy to fix the prices of corrugated containers in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 (1976). The Judicial Panel for Multidistrict Litigation consolidated those actions, pursuant to 28 U.S.C. § 1407 (1976), in the Southern District of Texas under the caption In re Corrugated Container Antitrust Litigation.
 
 
 5
 After the conclusion of the criminal trial, the plaintiff class in the consolidated civil action subpoenaed Fleischacker, Franey, Hopkins, and numerous other witnesses who had testified before the grand jury or during the criminal trial, requiring them to appear for depositions and to produce documents. Fleischacker, Franey, and Hopkins were all employees of defendant corporations during the period of the alleged price-fixing conspiracy. Fleischacker was deposed in New York, New York on January 22, 1980, and Hopkins, in Houston, Texas on January 30, 1980. Both refused to answer any questions concerning their alleged knowledge of or participation in the alleged price-fixing conspiracy, asserting their fifth amendment privilege against self-incrimination. Franey was deposed in Houston on March 4, 1980, and he, too, responded with silence to every substantive question. That same day, the plaintiff class went before the district court in Houston, seeking an order compelling Franey to testify. On the court's order, Franey appeared for deposition in open court on March 5, 1980. After listening to the questions, the court ordered Franey to answer. Again, he refused.
 
 
 6
 On March 6, the court entered Pretrial Order No. 40, adjudging Franey in civil contempt. The court concluded that the fifth amendment privilege was not available since, "(c)learly, Mr. Franey cannot be prosecuted in either state or federal courts using the testimony thus elicited. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972)." Record in No. 80-1284, vol. 1, at 12. The court explained:
 
 
 7
 This is because all the questions are either taken verbatim from the transcripts of his immunized testimony (in his interview with the Department of Justice attorney and at the criminal trial) or are so closely related in subject matter and so clearly derived from the immunized testimony as to be thoroughly tainted and inadmissible against him in any conceivable future prosecution.
 
 
 8
 Id. at 14.
 
 
 9
 Also on March 6, the court granted the class plaintiffs' motion to enter Pretrial Order No. 39. That order provides that the Honorable John V. Singleton, Jr., Judge of the United States District Court for the Southern District of Texas shall exercise the powers of a District Judge for the Southern District of New York for the purpose of overseeing the deposition of Philip Fleischacker.
 
 
 10
 Class plaintiffs obtained a subpoena from the United States District Court for the Southern District of New York requiring Fleischacker to appear for a continuation of his deposition in New York on March 10, 1980. Judge Singleton, in Houston, presided over that deposition by means of a speaker-phone connection. Deposing counsel asked Fleischacker a series of questions taken verbatim from the transcript of his immunized grand jury testimony[2] and further questions that counsel said were "derived" from the immunized testimony. Although Judge Singleton ordered Fleischacker to answer, he persisted in his invocation of the fifth amendment. Judge Singleton held him in contempt of court, citing the reasons set forth in Pretrial Order 40. Record in No. 80-1307, vol. 2, at 71.
 
 
 11
 Hopkins' deposition resumed in Houston on March 19, 1980. When Hopkins asserted his fifth amendment privilege, the deposition was recessed and continued in open court before Judge Singleton. Counsel asked him questions taken verbatim from his grand jury and trial testimony and questions purportedly "derived" from the immunized testimony. The court held Hopkins in contempt for his continued refusal to answer. Again, the court's order is based on a ruling that the answers to the questions "would be so clearly and thoroughly derived from the immunized testimony that they could never be used to prosecute Mr. Hopkins and therefore that he has no legitimate fear of self-incrimination . . . ." Record in No. 80-1338, at 24.
 
 II
 
 12
 Fleischacker first raises the issue whether the Fifth Circuit Court of Appeals has jurisdiction to decide his appeal. We agree with him that this court lacks jurisdiction and that the appeal should be heard by the Court of Appeals for the Second Circuit.
 
 
 13
 The District Court for the Southern District of New York issued the subpoena requiring Fleischacker to appear for the March 10 deposition under the authority of Fed.R.Civ.P. 45. Rule 45(d)(2) provides:
 
 
 14
 A resident of the district in which the deposition is to be taken may be required to attend an examination only in the county wherein he resides or is employed or transacts his business in person, or at such other convenient place as is fixed by an order of court. A nonresident of the district may be required to attend only in the county wherein he is served with a subpoena, or within 40 miles from the place of service, or at such other convenient place as is fixed by an order of court.
 
 
 15
 This rule makes it clear that Fleischacker, who was in the vicinity of New York, could have been required to appear for a deposition only in, or near, New York. He certainly could not have been compelled to travel to Houston, in the Southern District of Texas, to be deposed. As a non-party witness, he was not even subject to the jurisdiction of the District Court for the Southern District of Texas.[3] The policy behind the rule is to avoid unnecessary inconvenience and expense to deponents.
 
 
 16
 The same policy concern underlies Fed.R.Civ.P. 37, which governs the imposition of sanctions upon persons unjustifiably resisting discovery. Rule 37(a)(1) provides: "An application for an order to a deponent who is not a party shall be made to the court in the district where the deposition is being taken." This provision indicates that the only court that had the power to compel Fleischacker, a non-party deponent, to answer questions at a deposition conducted in the Southern District of New York was the district court sitting in that district. Rule 37(b)(1) provides that the power to enter sanctions against a deponent who disobeys an order to answer deposition questions also belongs to the court in the district in which the deposition is being taken.
 
 
 17
 If In re Corrugated Container Antitrust Litigation were not a section 1407 multidistrict case, then, there could be no question that a subpoena requiring Fleischacker to appear for a deposition would have to be issued by the District Court for the Southern District of New York or, perhaps, the District Court for the District of New Jersey as would an order compelling him to answer questions or an order holding him in contempt of court for refusing to answer. Of course, an appeal from that contempt order would be proper only in the Second Circuit Court of Appeals, "the court of appeals for the circuit embracing the district" in which the reviewable decision was rendered. 28 U.S.C. § 1294 (1976).
 
 
 18
 Under section 1407(b), the judge to whom a multidistrict case is assigned, "may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." It was this provision that enabled Judge Singleton to preside over Fleischacker's deposition in New York. In ordering Fleischacker to respond and in holding him in contempt, Judge Singleton was exercising the powers of a district judge of the District Court for the Southern District of New York. As the legislative history of section 1407 indicates, his actions were limited by the ordinary operation of the Rules of Civil Procedure:
 
 
 19
 By the term "pretrial proceedings" the committee has reference to the practice and procedure which precede the trial of an action. These generally involve deposition and discovery, and, of course, are governed by the Federal Rules of Civil Procedure.
 
 
 20
 H.R.Rep. No. 1130, 90th Cong., 2d Sess. (1968), reprinted in (1968) U.S.Code Cong. & Admin.News, pp. 1898, 1900.
 
 
 21
 Judge Singleton recognized in Pretrial Order No. 39 that the purpose of the section 1407 mechanism is to maximize the efficiency of discovery in multidistrict cases:
 
 
 22
 This court will preside rather than appoint a deposition judge because the matters to be examined and the objections which will probably arise are so inextricably interwoven with the delicate and complex structure of this litigation as to make it extremely difficult for a judge unfamiliar with the whole case to preside.
 
 
 23
 Record in No. 80-1307, at 1. This purpose may be fully served without considering Judge Singleton's orders compelling Fleischacker to testify and holding him in contempt to be orders of the District Court of the Southern District of Texas. And to consider them such would be contrary to the provisions of Rule 37 requiring that orders directed to recalcitrant deponents be issued in the district in which the deposition is taken. Moreover, it would defeat the Rules' strong policy of minimizing inconvenience to non-party witnesses to require Fleischacker and others in his position to travel thousands of miles to appeal a Rule 37(b)(1) contempt order.
 
 
 24
 Therefore, we must conclude that this court lacks jurisdiction to hear Fleischacker's appeal.
 
 III
 
 25
 We now turn to the question whether the trial court erred when it entered the orders holding Franey and Hopkins in contempt.
 
 
 26
 The fifth amendment provides that "(n)o person . . . shall be compelled in any criminal case to be a witness against himself . . . ." This privilege against compulsory self-incrimination "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory . . . ." Kastigar v. United States, 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). A witness may properly invoke the privilege when he "reasonably apprehends a risk of self-incrimination, . . . though no criminal charges are pending against him, . . . and even if the risk of prosecution is remote." Wehling v. Columbia Broadcasting System, 608 F.2d 1084, 1087, n. 5 (5th Cir. 1979) (citations omitted).
 
 
 27
 The Wehling test indicates that a court must ordinarily make two inquiries to determine whether a witness is entitled to assert the privilege and refuse to respond to questioning. First, the court must determine whether answers to the questions might tend to reveal that the witness has engaged in criminal activities. If the answers could not be incriminatory, the witness must answer. Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). If answering the questions might incriminate the witness, the court must next ask whether there is a risk, even a remote risk, that the witness will be prosecuted for the criminal activities that his testimony might touch on. As the Seventh Circuit recently observed:
 
 
 28
 (This determination does not depend) upon a judge's prediction of the likelihood of prosecution. Rather, . . . it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken. . . . When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster.
 
 
 29
 In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir. 1979) (citations omitted).
 
 
 30
 We have no doubt that Franey and Hopkins have met both requirements of this test. The plaintiff class seeks their testimony concerning their knowledge of and participation in the alleged nationwide price-fixing conspiracy. Their answers to the deposition questions may well reveal that they have violated federal and state criminal antitrust laws. The risk that they will be prosecuted for such crimes is certainly more than fanciful. There has been no suggestion that the applicable statutes of limitations have run, and, as Hopkins has testified, a federal grand jury sitting in Ohio has begun its own investigation of the corrugated container industry. Deposition of Alex Hopkins, at 39-40.
 
 
 31
 Even if a witness establishes that he has a reasonable fear of self-incrimination and that there is some risk of prosecution, he can be compelled to testify if he is first granted "use" immunity pursuant to 18 U.S.C. §§ 6001-6003. Section 6002 provides that when a witness is compelled by a district court order to testify over a claim of fifth amendment privilege:
 
 
 32
 (T)he witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.
 
 
 33
 In Kastigar v. United States, 406 U.S. at 453, 92 S.Ct. at 1661, the Supreme Court held that section 6002 immunity "from use and derivative use is coextensive with the scope of the privilege against self-incrimination, and therefore is sufficient to compel testimony over a claim of the privilege."
 
 
 34
 Franey and Hopkins both were granted such statutory immunity upon the Government's petitions for immunity orders to compel testimony before the Houston grand jury or at the criminal trial.[4] Section 6003 provides that an immunity order may be entered only at the request of a United States Attorney. Since the Government is not a party to the private antitrust action, a new grant of statutory immunity to compel the deposition testimony of Franey and Hopkins was unavailable. In re Daley, 549 F.2d 469, 479 (7th Cir.), cert. denied 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977).
 
 
 35
 The district court found, however, that no new grant of immunity was necessary since the deposition testimony of Franey and Hopkins would be "clearly and thoroughly derived from the immunized testimony previously given" and thus inadmissible in "any conceivable future prosecution." Record in No. 80-1338 at 19, 20. Because the deposition testimony would be thus "tainted," the court reasoned, neither witness could have a "legitimate fear of self-incrimination." Id. at 20, 25.[5]
 
 
 36
 The district court's reasoning indicates that the court had misconstrued its role in applying the immunity statute. Since the witnesses had not been in fact, could not have been granted immunity to compel their deposition testimony, the only issues before the court were the two comprised within the test restated by this court in Wehling : whether answers to the deposition questions might tend to reveal that the witnesses have engaged in criminal activities, and whether the witnesses face possible criminal prosecution. The court apparently attempted to fit its rulings within the framework of this test when it suggested that the deposition testimony would not be "incriminatory" since it would be "tainted." The existence of immunity or of derivative "taint" would have no bearing on the question whether testimony would be "incriminatory," however. Incriminatory testimony is simply testimony that suggests that the witness may have committed a crime. When incriminatory testimony is offered under a grant of immunity, the testimony remains incriminatory despite the immunity. Thus, it was inappropriate for the court, in applying the two-part test to determine whether the witnesses were entitled to invoke the fifth amendment, to consider whether the testimony was "tainted" such that it could not be used against them in future criminal prosecutions.
 
 
 37
 Nor did the immunity statute itself confer on the court the power to rule that Franey and Hopkins must testify on the ground that the compelled testimony would be "derived from the immunized testimony previously given." Although it is true that section 6002 contemplates that district courts will have the responsibility of determining what is a derived use of immunized testimony, the authority to make that determination is restricted to the situation where the witness has been indicted and the Government is seeking to introduce evidence to secure a criminal conviction. This notion that the issue of "taint" can be raised only in such a context is implicit in the decisions holding that the Government must bear the burden of disproving "taint." In Kastigar, for example, the Supreme Court observed that once a defendant demonstrates that he has testified under a grant of immunity, the prosecution has "the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." 406 U.S. at 460, 92 S.Ct. at 1665. Since the Government must bear the burden of proof on the issue of "taint," it follows that the issue was not properly raised in the present case, where the Government is not even a party.
 
 
 38
 The district court's rationale for compelling Franey and Hopkins to testify could be applied to override the fifth amendment claim of any witness any number of times, so long as the witness has previously testified under a grant of immunity. A court's role in the procedure that the district court has adopted would be to probe the mind of the questioner to ascertain that he is familiar with the substance of the immunized testimony. Even if the questioner were ignorant of the prior testimony, the court could ensure "taint," and thus compel the witness to answer, by seeing to it as the court did here that the questioner had a transcript of the immunized testimony on which to "base" his questions. And even if the court's finding that the witness' testimony would be "derived" from immunized testimony were manifestly wrong, the court's order compelling the testimony would operate to immunize the testimony because of "the well-established rule that if a district court errs in making a ruling on privilege an after-the-fact exclusionary rule will apply to prevent the introduction of that evidence against the witness." In re Folding Carton, 609 F.2d at 872, n. 11.[6] The resulting proliferation of "immunized" testimony would make it almost impossible for the Government, in a subsequent criminal trial, to sustain its heavy burden of proving that its prosecution is untainted.
 
 
 39
 In the absence of the district court's ruling that their deposition testimony would be "derived" from immunized testimony, Franey and Hopkins certainly could have legitimately invoked their privilege to remain silent. It is only the court's finding that their testimony will be "tainted" that is offered to support the abrogation of their fifth amendment privilege. In effect, then the district court has granted immunity to Franey and Hopkins of its own accord.[7] In addition to being contrary to the explicit provisions of the immunity statute that provide for an order of immunity only on the application of a government attorney, the court's action undermines the policies of the statute. As the Seventh Circuit observed in In re Daley, 549 F.2d at 478-479 (7th Cir. 1977):
 
 
 40
 (O)nce the bar of the privilege against self-incrimination has been raised by the witness, the decision whether to confer immunity in order to facilitate the government's investigation is the product of the balancing of the public need for the particular testimony or documentary information in question against the social cost of granting immunity and thereby precluding the possibility of criminally prosecuting an individual who has violated the criminal law. Therefore, the relative importance of particular testimony to federal law enforcement interests is a judgmental rather than a legal determination . . . .
 
 
 41
 Although it is correct . . . that federal courts possess inherent equitable powers over their own process in order to secure judicial proceedings from abuse, United States v. United Fruit Company, 410 F.2d 553 (5th Cir.), cert. denied sub nom. Standard Fruit and Steamship Co. v. United States, 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969), the immunity order which is issued pursuant to 18 U.S.C. § 6003 is not a matter of judicial process or judicial discretion. The immunity power originates in the legislature, United States v. Bryan, 339 U.S. 323, 70 S.Ct. 724, 94 L.Ed. 884 (1950); its exercise is delegated solely to the executive. . . . Consequently, the determination of whether the conferral of immunity is proper in a particular case "requires intimate familiarity with the nature and details of the investigation and the background of the witness." Murphy v. Waterfront Commission, 378 U.S. 52, 100, 84 S.Ct. 1594, 1614, 12 L.Ed.2d 678 (1964) (White, J., concurring). This is knowledge to which the federal prosecutor, and not the federal court, is privy, and it is therefore the authority of the United States Attorney to confer such extensive immunity which must be scrutinized.
 
 
 42
 (Some citations omitted.)
 
 
 43
 The Supreme Court, also, has indicated that courts have only a limited role in applying immunity statutes and no inherent power to grant immunity. In Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), the Court rejected the contention that the federal immunity statute unconstitutionally required a district court to act outside of its "judicial power":
 
 
 44
 Since the Court's duty under the (predecessor of the present immunity statute) is only to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the Attorney General, we have no difficulty in concluding that the district court is confined within the scope of "judicial power."
 
 
 45
 350 U.S. at 434, 76 S.Ct. at 504 (emphasis supplied). See also In re Folding Carton Antitrust Litigation, 465 F.Supp. 618, 628 (N.D.Ill.), rev'd on other grounds, 609 F.2d 867 (7th Cir. 1979) (suggesting that a district court has no power to make a prospective determination that future deposition testimony will be tainted).
 
 
 46
 Because the district court's orders are supported by neither the immunity statute nor any authority inherent in the court, we hold that the district court lacked the power to enter the orders compelling Franey and Hopkins to answer deposition questions and adjudging them in contempt for their continued refusal to answer. Those orders are therefore VACATED.
 
 
 47
 FRANK M. JOHNSON, Jr., Circuit Judge, dissenting:
 
 
 48
 There is no question but that the majority opinion is correct that it is beyond the authority of a district judge unilaterally to grant immunity to compel deposition testimony. See 18 U.S.C. § 6003; In re Daley, 549 F.2d 469, 479 (7th Cir.), cert. denied, 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 (1977). However, a grant of immunity under 18 U.S.C. § 6001 et seq. such as that received by appellants for their grand jury testimony covers any information "directly or indirectly derived" from the immunized testimony. The district judge held that, because the appellants' deposition questions were based entirely on the earlier immunized testimony, the deposition testimony would be sufficiently "tainted" by the earlier testimony so as to bar its use against appellants in any subsequent criminal proceeding. In other words, the deposition testimony would be precluded as a derivative use. The majority reverses the district judge because, according to it, the district court lacked authority to make that determination.
 
 
 49
 It has always been for the courts to determine whether an assertion of the privilege is proper. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); United States v. Melchor Moreno, 536 F.2d 1042, 1046 (5th Cir. 1976). Courts have also always decided the taint question whether evidence should be excluded as derivative of immunized testimony. Murphy v. Waterfront Comm'n, 378 U.S. 52, 79, 84 S.Ct. 1594, 1609, 12 L.Ed.2d 678 (1964), and Kastigar v. United States, 406 U.S. 441, 460, 92 S.Ct. 1653, 1664, 32 L.Ed.2d 212 (1972), place a very high "affirmative duty" upon the prosecution "to prove that the evidence . . . is derived from a legitimate source wholly independent of the compelled testimony." This burden has been interpreted strictly against prosecutors. See, e. g., United States v. Nemes, 555 F.2d 51, 55 (2d Cir. 1977) (lack of access to immunized testimony is not sufficient); United States v. McDaniel, 482 F.2d 305, 311-12 (8th Cir. 1973). It is my judgment that any prosecutorial use of the deposition testimony required by the district judge would, without any question, be barred as derivative of the compelled evidence.
 
 
 50
 The majority opinion is correct that the taint issue has usually arisen when prosecutors tried to introduce evidence in a criminal trial. That is to be expected. I do not think, however, that the conclusion ineluctably follows that a prospective determination of taint such as that the district judge made here exceeds judicial authority. Such prospective determination have in the past been made. See Appeal of Starkey, 600 F.2d 1043, 1046 (8th Cir. 1979); Patrick v. United States, 524 F.2d 1109, 1120 (7th Cir. 1975) (Stevens, J.).[1] Since both logic and prior authority in my judgment dictate a result contrary to that reached by the majority, I respectfully dissent.
 
 
 
 [1]
 Pursuant to the recalcitrant witness statute, 28 U.S.C. § 1826 (1976), the district court sentenced each of the appellants to sixty days imprisonment and a fine of five thousand dollars. The court stayed execution of the sentences pending the filing and determination of these appeals
 
 
 [2]
 In February 1980 the court had ordered the Government to disclose to the plaintiff class the transcripts of the grand jury testimony of numerous witnesses, including Fleischacker, Franey and Hopkins. That order is now on appeal before the Fifth Circuit in a separate proceeding
 
 
 [3]
 As the court observed in Lincoln Laboratories, Inc. v. Savage Laboratories, Inc., 27 F.R.D. 476, 477, 478-79 (D.Del.1961):
 It is obvious that the court in which the action is pending stands in a different position as to parties, or officers or agents of corporate parties, as to whom it has personal jurisdiction than it does as to "disinterested" witnesses of whom it has no personal jurisdiction, and especially where the deposition is taken in a district other than that in which the litigation is pending. . . .
 If the party or witness refuses to answer any question after being directed to do so by the court in the district in which the deposition is being taken, the refusal may be considered a contempt of that court. If this witness was a "disinterested witness", the court in the district where the litigation is pending would ordinarily have no jurisdiction over that witness and could not hold him in contempt.
 
 
 [4]
 Before Franey was granted statutory immunity during the criminal trial, the Department of Justice gave him a letter promising him immunity in exchange for his answers to interview questions posed by a Department of Justice attorney. Since we suppose that the district court could have based its order compelling Franey to answer deposition questions solely on the grant of statutory immunity, we find it unnecessary to consider the validity of the letter grant of immunity
 
 
 [5]
 The district court relied on Appeal of Starkey, 600 F.2d 1043 (8th Cir. 1979), as authority for its ruling. In Starkey, the court held that a witness at a civil deposition had no right to invoke his fifth amendment privilege against self-incrimination since the deposition testimony would be tainted by grand jury testimony that the witness had given under a grant of immunity. For the reasons we state in text, we disagree with the Eighth Circuit's apparent assumption that the district court had the authority to determine whether the grand jury testimony would be "tainted." Nevertheless, the result in Starkey may well be correct since the state attorney general, the only potential prosecutor, was a party to the civil litigation and was the party seeking the deposition testimony. By arguing that the testimony would be tainted, the attorney general conceded that the testimony would be inadmissible in a future prosecution. This concession may itself have operated as a grant of immunity
 
 
 [6]
 This "exclusionary" rule does not itself buttress the order compelling Franey and Hopkins to testify. As the Folding Carton court emphasized, the rule "is solely remedial and cannot be used as a rationale to support a judicial decision which contravenes the fifth amendment's protection." In re Folding Carton Antitrust Litigation, 609 F.2d 867, 872, n. 11 (7th Cir. 1979)
 
 
 [7]
 See Ellis v. United States, 416 F.2d 791 (D.C. Cir. 1969). In Ellis, a trial court had rejected a witness' claim of fifth amendment privilege on the ground that the testimony could not be used against the witness in a future prosecution, regardless of the correctness of the court's ruling. The court of appeals repudiated the trial court's ruling, holding that the ruling, which was "a circular, self-fulfilling prophecy that in substance can only be viewed as a grant of immunity," was outside the scope of judicial authority. Id. at 796
 
 
 [1]
 Decisions to the contrary are: In re Folding Carton Antitrust Litigation, 465 F.Supp. 618, 628 (Northern District of Ill.) Rev'd on other grounds, 609 F.2d 867 (7th Cir. 1979) (per curiam); cf. Ellis v. United States, 416 F.2d 791, 796 (D.C. Cir. 1969)