**In re FOLDING CARTON ANTITRUST LITIGATION.**

**Appeal of R. Harper BROWN, Deponent.**

**No. 79–1628.**

United States Court of Appeals, Seventh Circuit.

Argued July 9, 1979.

Decided July 12, 1979.

Rehearing and Rehearing In Banc Denied Aug. 20, 1979.

James F. Holderman, Chicago, Ill., for appellant.

Lee A. Freeman, Sr., Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and BAUER and WOOD, Circuit Judges.

PER CURIAM.

This appeal arises from a district court order holding R. Harper Brown in civil contempt. Brown asserted a fifth amendment privilege and refused to answer questions propounded at a civil deposition after the court had ordered him to testify. He argues on appeal that he had "just cause" to assert the privilege because never having been granted immunity, prosecution remained possible. This court has jurisdiction under 28 U.S.C. § 1291 and the proceeding is governed by the recalcitrant witness statute.[1] This court stayed execution of the district court's commitment order pending disposition of the appeal.[2]

I. *Background*

In 1976 a Department of Justice investigation of the folding carton industry culminated in the indictment of twenty-three folding carton producers and fifty of their executives with one Sherman Act misdemeanor count charging a conspiracy to fix prices from 1960 to December 1974. *United States v. Consolidated Packing Corp.*, 575 F.2d 117 (7th Cir. 1978). At the time of the indictment Brown was the President and Chief Operating Officer of Container Corporation of America (CCA), the largest producer of folding cartons. Brown pleaded nolo contendere on April 23, 1976. The

district court imposed a sentence of 15 days incarceration, $15,000 fine, and a mandatory probationary project. Mr. Brown completed his sentence and paid the fine.

In addition to the indictment, the Department of Justice filed a civil action for damages for alleged violations of the antitrust laws and false claims act. *United States v. Alton Box Board Co., et al.*, No. 76 C 1638 (N.D.Ill.). This civil action and various related private treble damage actions commenced in the Northern District of Illinois and elsewhere were transferred to the Northern District of Illinois as MDL No. 250.[3] Brown's first deposition was conducted on December 28, 1978. Brown provided his name and residence address but refused on fifth amendment grounds to answer all further questions. On January 26, 1979 plaintiffs moved to compel the testimony of twenty-one witnesses, including Brown, who had refused to testify on fifth amendment grounds. On February 16, 1979 the court compelled the testimony of several other deposition witnesses who had interposed the fifth amendment privilege. The court's reasoning was memorialized in Pretrial Order No. 41.[4] On June 7, 1979 the court granted the motion to compel the testimony of Brown for the same reasons previously set forth in Pretrial Order No. 41.

1. Title 28 U.S.C. § 1826(a) provides:

   (a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—
   (1) the court proceeding, or
   (2) the term of the grand jury, including extensions, before which refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months.

2. Title 28 U.S.C. § 1826(b) provides:

   (b) No person confined pursuant to subsection (a) of this section shall be admitted to bail pending the determination of an appeal

taken by him from the order for his confinement if it appears that the appeal is frivolous or taken for delay. Any appeal from an order of confinement under this section shall be disposed of as soon as practicable, but not later than thirty days from the filing of such appeal.

3. The Government's civil damage action has since been settled and dismissed by stipulation in November 1978.

4. Pursuant thereto, some witnesses gave deposition testimony. Some of these witnesses had received previously grants of immunity. Two of the witnesses, Longnecker and Noonen, attempted to raise the issue of the propriety of Pretrial Order No. 41 by mandamus. On April 18, 1979 this court citing *Alexander v. United States*, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686 (1906), declined to issue the writ on the ground that the issue of the propriety of an order compelling testimony is not properly raised by mandamus.

At the deposition held on June 12, 1979 Brown appeared for questioning but refused to answer certain questions again asserting a fifth amendment privilege. Brown stated his name and address but refused to disclose the name of his present employer and refused to acknowledge that the order compelling testimony applied to him. Brown consented only to answer further questions concerning his educational background. On June 12, 1979 the district court granted plaintiffs' motion to hold Brown in contempt but stayed commitment for five hours to permit Brown to appeal. Although the minute order does not disclose the reasoning of the district court in holding the witness in contempt, the transcript of the proceedings discloses that the district court found that the witness possessed a degree of double jeopardy protection arising from his prior conviction which outweighed the fifth amendment objection. The court expressed concern that a witness could jeopardize the conduct of discovery in civil antitrust litigation when "he couldn't conceivably be subject to prosecution as far as any information he gave at this deposition." This court granted a stay of the commitment order pending appeal.

II. *Pretrial Order No. 41*

In Pretrial Order No. 41 the district court presented a thirty-one page discussion of the propriety of compelling deposition testimony of a group of witnesses over claims of fifth amendment privilege. In Pretrial Order No. 51 the court specifically made this reasoning applicable to Brown. In sum the court concluded that Brown did not have "a sufficient fear of prosecution" to invoke his fifth amendment privilege. For our purposes a brief outline of the court's analysis provides a sufficient background against which to consider the parties' arguments on appeal. From the general proposition that the fifth amendment does not exonerate a witness from testifying unless there is a real danger of self-incrimination, the court went on to explore the meaning of "reasonable fear of prosecution." The court concluded that there was no reasonable fear of prosecution when actual prosecution was only a speculative possibility as he perceived it to be in this case. Even though the statute of limitations has not run, and the witness has not been granted immunity, the court concluded that prosecution was remote when there was no indication that federal officials would reopen their massive completed investigation. The court further saw no indication that state prosecutors might have any interest in criminally charging the witnesses. Finally, the district court concluded that when there is no reasonable fear of prosecution, there is no danger of self-incrimination and therefore there is no bar to compelling the witness' testimony.

In reaching its conclusion to compel testimony the court refused to follow the law in two circuits which rejects the "likelihood of prosecution" test of fifth amendment protection outright (*United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1972); *United States v. Miranti*, 253 F.2d 135 (2d Cir. 1957)) and distinguished the holdings of two other circuit courts of appeals which rejected the test on the facts before them (*In re Master Key*, 507 F.2d 292 (9th Cir. 1974); *United States v. Seavers*, 472 F.2d 607 (6th Cir. 1972)). Finally, the court concluded that this court in *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531, 539 (7th Cir. 1977), "implicitly accepted a court's authority to evaluate the practical likelihood of a subsequent prosecution." While recognizing that a district court could not initiate and grant immunity the court ruled that "in the unlikely event that a subsequent prosecution is initiated by either state or federal authorities for the activities which were charged and proven as to other defendants for the pre-December, 1974 period in the original federal indictment, any use or derivative use of any incriminating testimony given in the compelled deposition answers in a subsequent criminal proceeding would be impermissible." In a footnote the court advised that the deposition answers should be filed under seal until the time of trial and be otherwise subject to a protective order preventing disclosure.

III. *Fifth Amendment Protection*

██ The only issue raised on this appeal is whether the district court abused its dis-

cretion in holding Brown in civil contempt for failing to comply with its order rejecting Brown's invocation of his fifth amendment privilege and requiring him to testify.[5] In our view of the record the district court relied principally on the reasons articulated in Pretrial Order No. 41 when it concluded that Brown can properly be compelled to testify. Thus, our principal focus on review is the propriety of the district court's view that lack of a substantial likelihood of prosecution can be equated with a lack of self-incrimination.

### A. The Possibility of Subsequent Prosecution

In compelling Brown's testimony the district court charted its course among the precedents established in four other circuits because it perceived a need for courts to forestall the ability of a previously convicted civil deponent to limit the conduct of discovery. However real that need, and however much we appreciate the legitimate practical concerns of the trial court, we cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution. Rather, we conclude that it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken. *See, e. g., In re Brogna,* 589 F.2d 24 (1st Cir. 1978); *United States v. Goodman,* 289 F.2d 256, 259 (4th Cir. 1961), *vacated on other grounds,* 368 U.S. 14, 82 S.Ct. 127, 7 L.Ed.2d 75 (1962). When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster.

Appellees argue that their stated oral assurance to restrict their deposition questions to the pre-December 1974 activities of Brown in reference to folding cartons affords Brown a complete protection against subsequent prosecution pursuant to the law of double jeopardy. Further, appellee asserts that since the possibility of Brown's indictment for state offenses committed before 1974 is "trifling," it was proper for the district court to discount that possibility of prosecution and compel the testimony. While appellees correctly claim that the conviction of Brown on the one count Sherman Act violation nullifies any claim of privilege for liability for that offense,[6] we cannot agree that Brown does not remain open to further state[7] or federal prosecutions. A valid state indictment filed within the statute of limitations[8] could cover any alleged illegal activities engaged in by Brown regardless of the time of occurrence or product-line. Appellant argues that it is not fanciful to say that a federal prosecution could use pre-1974 evidence to substantiate claims of a felony conspiracy (after December 1974) in the folding carton product-line, or a conspiracy involving other product-lines. In addition, Brown could face federal and state charges arising from the same facts as his earlier indictment if an additional element is needed to prove those charges. *See Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405

---

5. It is clear that the trial court has the discretion to assess the facts which underlie an asserted claim of fifth amendment privilege. *See, e. g., Hoffman v. United States,* 341 U.S. 479, 486–88, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). What tests are to be applied in the exercise of that discretion is the subject of the discussion in Part III, Section A.

6. *See, e. g., United States v. Romero,* 249 F.2d 371, 375 (2d Cir. 1957). This court previously has stated:

"[A] plea of nolo contendere waives all non-jurisdictional defects in criminal proceedings prior to appeal (citation omitted) and, in particular, all defects in an indictment other than its insufficiency (citation omitted)."

*United States v. Michigan Carton Co.,* 552 F.2d 198, 201–02 (7th Cir. 1977). For a recent discussion of the legal effect of a plea of nolo contendere, see *United States v. Hancock,* 604 F.2d 999 (7th Cir. 1979).

7. The fifth amendment privilege protects federal witnesses against incrimination under state as well as federal law. *Kastigar v. United States,* 406 U.S. 441, 456–57, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

8. Various statutes of limitation which may be applicable to possible charges remain open to question.

(1958).[9] Appellant suggests mail fraud as an example. It is argued that the pre-1974 evidence could be used in a subsequent prosecution not to substantiate guilt on the subsequent charges but to show a common plan or scheme, or motive. Finally, we are not alone in taking the view that a possibility of subsequent prosecution is not fanciful since the Department of Justice in a brief filed in the trial court before its case was settled stated that a possibility of prosecution exists for testifying witnesses.

■ In sum, we agree with the Ninth Circuit Court of Appeals that the right to assert one's privilege against prosecution "does not depend upon the *likelihood*, but upon the *possibility* of prosecution." *In re Master Key Litigation*, 507 F.2d 292, 293 (9th Cir. 1974) (emphasis in original). To the extent that an assessment of the probability of prosecution is significant in the trial court's evaluation of an asserted privilege, it is more properly accomplished through examination of the more traditional tests, viz, statute of limitations, immunity, double jeopardy. Short of the existence of one of these indicia of an absolute bar to subsequent prosecution, a judge's prediction as to the likelihood of a prosecutor filing an indictment [10] is not dispositive in ascertaining the permissible scope of a claim of fifth amendment privilege.[11] In so holding we align ourselves with the law of the First and Second Circuit Courts of Appeals and that of a district court in California. *United States v. Johnson*, 488 F.2d 1206 (1st Cir. 1972); *United States v. Miranti*, 253 F.2d

135 (2d Cir. 1957); *Priebe v. World Ventures, Inc.*, 407 F.Supp. 1244 (C.D.Cal.1976). In addition, we do not view *Ryan v. Commissioner of Internal Revenue*, 568 F.2d 531 (7th Cir. 1977), as an implicit acceptance of the view that a district court when ruling on an interposed fifth amendment claim permissibly may evaluate the likelihood of the filing of an indictment. In *Ryan* this court held that when a witness has been convicted of related tax offenses on three occasions, when the statute of limitations has run, and when there has been a valid grant of prosecutorial immunity "the possibilities of prosecution . . . appear to be remote" and rejection of a claim of privilege is proper. 568 F.2d at 539. While the district court's view of *Ryan* is perhaps arguable, we do not interpret the case in that way.

## B. "Waiver" of Fifth Amendment Privilege

Since we have concluded first, that the trial court has the discretion to evaluate the adequacy of a claim of privilege and second, that the trial court looks to the possibility of incrimination but not the probability of the filing of an indictment in ascertaining the validity of a fifth amendment privilege, it is necessary for the trial court in the first instance to apply those general rules to the facts of this case in order to decide which refusals to answer may or may not be a basis for holding Brown in contempt. Relevant to our analysis of this process are the

---

9. While "double" prosecutions are not lightly undertaken, a second prosecution is not absolutely barred. *See United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958) and cases cited therein. In this light, we are not willing to assume that such a prosecution could not take place.

10. Appellees buttress their assertion that the federal authorities are not likely to reopen their massive completed investigation by noting that all known federal grand juries investigating the folding carton industry have now been disbanded. However, we do not view the pendency of grand jury proceedings as being dispositive of the issue of possibility of prosecution. *See In re Master Key Litigation*, 507 F.2d 292 (9th Cir. 1974).

11. The district court also held that any incriminatory testimony which Brown might give could not be used against him in a subsequent prosecution. While the parties to this appeal argue over the permissibility of this ruling, we conclude that the district court was merely stating the well-established rule that if a district court errs in making a ruling on privilege an after-the-fact exclusionary rule will apply to prevent the introduction of that evidence against the witness. *Adams v. Maryland*, 347 U.S. 179, 181, 74 S.Ct. 442, 98 L.Ed. 608 (1954). Of course, this exclusionary rule is solely remedial and cannot be used as a rationale to support a judicial decision which contravenes the fifth amendment's protection.

concepts of "waiver" and the concomitant focus upon the sorts of testimony which could provide a link in the chain of evidence needed in a subsequent prosecution.

■ On the record presented there is some lack of clarity regarding which refusals to testify can be appropriate bases for contempt. Reasonable possibility of incrimination is much more apparent as to the questions asked of Brown in his December 1978 deposition than in the deposition held on June 12, 1979. Brown has suggested a theory which supports his claims of privilege with respect to questions about his present capacity as president of CCA but which is less persuasive with respect to questions about his initial employment with the company which commenced in 1947. While the deponent has a genuine concern that in testifying further he may go far enough into a particular area so as to waive his privilege not to disclose incriminating details,[12] the trial court need not take on faith that the answer to the propounded questions may incriminate. Rather, "as to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further incrimination." [13]

■ It is our understanding of the record that the district court based its decision on its factual estimate that state or federal prosecutors were unlikely to prosecute and did not really determine on the basis of the subject matter of the questions which, if any, refusals of appellant were properly grounded. We therefore deem it appropriate to vacate the contempt order since it rests upon what we conclude is an erroneous standard and remand so that the district court can determine under the more traditional tests which, if any, refusals were properly grounded. While the method of proceeding is solidly within the realm of the district court's discretion, one possible way of proceeding under the circumstances would be to direct the parties to carry the deposition further. It is suggested that plaintiffs might ask more specific and limited questions so that the district court might more readily determine whether particular refusals to answer were or were not sustainable.

For these reasons, the order of the district court holding Brown in contempt is vacated and the case is remanded to the district court for further proceedings consistent with this opinion.

---

12. The leading case on fifth amendment waiver is *Rogers v. United States*, 340 U.S. 367, 71 S.Ct. 438, 95 L.Ed. 344 (1951).

13. *Rogers, supra*, 340 U.S. at 374, 71 S.Ct. at 442.