632 F.2d 700
 1980-2 Trade Cases 63,522
 LITTLE ROCK SCHOOL DISTRICT, North Little Rock School
District, Mountain Home School District, and State
of Arkansas, Appellees,
v.
BORDEN, INC.; Coleman Dairy, Inc.; Dean Foods Company;
Foremost-McKesson, Inc.; and Hiland Dairy, Inc.,
Eugene F. Proctor, Simeon Walter Lynn, Appellants.
 No. 79-1994.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 10, 1980.
Decided Sept. 9, 1980.
Rehearing and Rehearing En Banc Denied Oct. 27, 1980.
 
 William R. Wilson, Jr., Richard N. Moore, Dodds, Kidd & Ryan, Little Rock, Ark., for appellants.
 Gary V. McGowan, Mandell & Wright, Houston, Tex., for appellees; Steve Clark, Atty. Gen., Carl A. Crow, Jr., Asst. Atty. Gen., Little Rock, Ark. and Stephen D. Susman, and Randall Wilson, Houston, Tex., on brief.
 Before GIBSON, Senior Circuit Judge, and HEANEY and STEPHENSON, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 This interlocutory appeal arises from an order compelling testimony from two witnesses in a civil antitrust case. The issue was certified by the district court[1] and we granted leave to appeal pursuant to 28 U.S.C. § 1292(b). We affirm on grounds other than those relied on by the district court.
 
 I.
 BACKGROUND
 
 2
 On May 10, 1977, the State of Arkansas filed this class action on behalf of all persons in Arkansas who purchased dairy products from the defendant milk producers, alleging that the defendants had violated federal antitrust laws.[2] The action followed closely on the heels of an indictment, returned by a federal grand jury on April 22, 1977, that charged Borden, Inc., Coleman Dairy, Inc., Dean Foods Products Company, Inc., Simeon W. Lynn and Eugene F. Proctor with conspiring to fix the prices of dairy products in twenty-eight counties in central Arkansas during the period from February, 1971, to June, 1976. Lynn and Proctor, along with the corporate defendants, pled nolo contendere to this charge and were convicted on December 27, 1977.
 
 
 3
 In early 1978, federal prosecutors convened a second grand jury to investigate into further allegations of dairy industry price fixing. Both Lynn and Proctor were summoned before this grand jury in June of 1978 and were granted use immunity pursuant to 18 U.S.C. § 6003 for their testimony. No indictments were returned and the grand jury was discharged. None of the testimony presented to the grand jury has been disclosed to the parties to this action. Transcripts of the grand jury testimony of Lynn and Proctor are, however, lodged in the district court.
 
 
 4
 After the June, 1978, grand jury had been dissolved, the State of Arkansas attempted to take the depositions of Lynn and Proctor for use in this civil action. At both depositions, each witness invoked his Fifth Amendment privilege against self-incrimination and refused to answer any question that went beyond his identity and current address. Arkansas them moved to compel Lynn and Proctor to testify on the ground that further prosecution of either man was unlikely. On December 29, 1978, the district court denied the state's motion, reasoning that since the witnesses' nolo contendere pleas covered conduct more limited in time and geographic scope than that encompassed in the civil action, the possibility of the witnesses' testimony prompting further federal prosecution was sufficient to sustain the invocation of the Fifth Amendment privilege. It also acknowledged but did not discuss the possible danger of future state prosecutions.
 
 
 5
 Further, the court noted that requests made to the Department of Justice for federal immunity had already been denied. Instead it had on file a letter from an Assistant United States Attorney expressing the following prosecutorial intentions:
 
 
 6
 The United States as a litigant in (this) action hereby represents to the Court that it does not contemplate any further criminal action against S. W. Lynn, Eugene Proctor and Carlos Starkey for any conduct involving the pricing of milk in Arkansas, if said conduct occurred prior to April 22, 1977.
 
 
 7
 The court rejected this "as a substitute for the appropriate Congressionally-mandated procedure under 18 U.S.C. § 6003(b)," Little Rock School Dist. v. Borden, Inc., Nos. LR-76-C-41, LR-C-77-126, LR-C-77-108, slip op. at 4 (E.D.Ark., Dec. 29, 1978) (hereafter Order of December 29, 1978), and denied the motion to compel testimony.
 
 
 8
 After the district court issued this order on December 29, 1978, two events occurred which prompted Arkansas to move for reconsideration: the issuance of an order compelling testimony in In re Folding Carton Antitrust Litigation, 465 F.Supp. 618 (N.D.Ill.1979) (later vacated at 609 F.2d 867 (7th Cir. 1979)),[3] and the court's receipt of a more detailed letter of prosecutorial intent from a Justice Department official. On May 18, 1979, Judge Eisele reconsidered his December order and concluded that the testimony of Lynn and Proctor should be compelled. Although he rejected reliance on Folding Carton, he was persuaded that the letter of Barry F. McNeil, Chief of the Dallas office, Antitrust Division, Department of Justice, had critical implications for the witnesses' Fifth Amendment claims. The letter read as follows:
 
 
 9
 The Court has requested the Antitrust Division of the Department of Justice to state its position regarding applications for immunity, pursuant to 18 U.S.C. § 6001, et seq., in State of Arkansas v. Borden, Inc., et al., LR-C-77-126.
 
 
 10
 The Department of Justice is vested with the authority to seek immunity for witnesses under the Organized Crime Control Act of 1970, 18 U.S.C. § 6001, et seq. By statute, the Department is required to seek immunity only in circumstances where it has made a determination, under § 6003(b), that the testimony of the individual may be necessary to the public interest. In making its determination of the public interest necessity of the testimony, the Department has declined to seek immunity in private litigation where the grant of immunity would further private, rather than governmental, interests.
 
 
 11
 Although the injunctive case, United States v. Borden, Inc., et al., LR-C-77-108, is presently before this Court, and was consolidated with the damage actions of the State of Arkansas and the private plaintiffs, the Antitrust Division is in the process of concluding negotiations with the defendants in this case which will result in a consent decree. In view of the status of these settlement negotiations, the Division did not seek to participate in discovery pending the outcome of the negotiations. Accordingly, any attempts to seek immunity for witnesses in this case would be inappropriate at this time and inconsistent with the congressionally mandated intent that the immunized testimony be necessary to the public interest.
 
 
 12
 Since the Antitrust Division cannot make the representations to the Court that the testimony is necessary and will further the interests which the Government here represents, we will not apply for immunity for any witnesses in State of Arkansas v. Borden. This decision should not be taken to reflect any enforcement intentions with respect to Messrs. Proctor and Lynn. We do not intend to bring an enforcement action against either of those gentlemen based upon activities in the dairy industry in Arkansas for which they were prosecuted in United States v. Borden, Inc., et al. (LR-CR-77-60) or concerning which they testified before the June 1978 grand jury in the Eastern District of Arkansas.
 
 
 13
 The district court concluded that this letter constituted "an effective, de facto grant of transactional immunity from any antitrust criminal prosecution for any activities in the milk industry in Arkansas within a certain time frame, a grant of immunity that is enforceable in this Court as a matter of constitutional law." Little Rock School Dist. v. Borden, Inc., Nos. LR-76-C-41, LR-C-77-126, LR-C-77-108, slip op. at 15 (E.D.Ark., May 18, 1979) (hereafter Order of May 18, 1979) (emphasis in original). It therefore ordered that Lynn and Proctor be "compelled to testify at deposition about all matters pertaining to 'activities in the dairy industry in Arkansas for which they were prosecuted * * * or concerning which they testified before the June 1978 grand jury * * *.' " Id.[4]
 
 
 14
 On October 29, 1979, the district court denied motions to reconsider the May 18th order but certified the issues raised by these motions for appeal to our Court.[5] We have accepted jurisdiction.
 
 II.
 ANALYSIS
 
 15
 A critical issue before us is whether Lynn and Proctor face any danger of further criminal prosecution as a result of testifying in this case.[6] Clearly, their prior conviction for price fixing in twenty-eight Arkansas counties during the period prior to June 30, 1976, protects them from further federal prosecution for that particular activity. Further, the immunization of their testimony before the June, 1978, grand jury protects them from any subsequent prosecution, state or federal, in which direct or indirect use of this testimony is made. Kastigar v. United States, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); United States v. McDaniel, 482 F.2d 305 (8th Cir. 1973).
 
 
 16
 Nevertheless, the district court concluded that there was sufficient danger of subsequent federal prosecution to sustain the invocation of the Fifth Amendment privilege. Noting that the civil action was broader in both geographic scope and time than were the prior criminal convictions, the court decided that this case fell "outside the more normal situation in which a conviction involving a criminal transaction terminates one's Fifth Amendment privilege with regard to testimony about that transaction." Order of December 29, 1978 slip op. at 3 (citation deleted). Similarly, the witnesses were not protected by the immunity granted to their grand jury testimony, since the deposition questions were not derived from that testimony. See United States v. Kuehn, 562 F.2d 427 (7th Cir. 1977).
 
 
 17
 Although the December 29th order was reconsidered in the order of May 18, these conclusions were not altered. Instead, the district court determined that the threat of prosecution identified in the December 29, order had been negated by the government's "solemn promise" not to prosecute. Order of May 18, 1979, slip op. at 16. Noting that such a promise, if relied upon by a witness, insulates him from further prosecution based on his testimony, see Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357 (1963); Mobley v. Meek, 531 F.2d 924 (8th Cir. 1976), the district court concluded that such a promise takes away the threat of prosecution even for a witness who refuses to rely upon it. Since the witness has the ability to extinguish the threat of prosecution, the district court reasoned that the witnesses' testimony may be compelled. Order of May 18, 1979, slip op. at 16; see In Re Kelly, 350 F.Supp. 1198-1200 (E.D.Ark. 1972).
 
 
 18
 Our problem with this reasoning is its conclusion that the federal government has made a "solemn promise" not to prosecute. The district court found such a promise in the following sentences:
 
 
 19
 This decision (not to seek statutory immunity) should not be taken to reflect any enforcement intentions with respect to Messrs. Proctor and Lynn. We do not intend to bring an enforcement action against either of those gentlemen based upon activities in the dairy industry in Arkansas for which they were prosecuted in United States v. Borden, Inc., et al. (LR-CR-77-60) or concerning which they testified before the June 1978 grand jury in the Eastern District of Arkansas.
 
 
 20
 This is not the language of a promise. It is a carefully circumscribed statement of intent; it was made to the court, not to the witnesses; and it sought no testimony in return. As a result, we cannot say that testimony given in reliance on this statement would be excludable from future prosecution by virtue of its being involuntary; that is, "obtained by any direct or implied promises." Shotwell Mfg. Co. v. United States, supra, 371 U.S. at 347, 83 S.Ct. at 453 (quoting Bram v. United States, 168 U.S. 532, 542, 18 S.Ct. 183, 186, 42 L.Ed. 568 (1897)). Since the government has made no attempt to compel the witnesses' statements by inducement, the constitutional analysis of the compelled confession cases is inapplicable.
 
 
 21
 Our difficulty with the district court's reasoning does not, however, prohibit the compulsion of certain testimony. The district court's order compelling testimony "about all matters pertaining to 'activities in the dairy industry in Arkansas for which they were prosecuted * * * or concerning which they testified before the June 1978 grand jury * * *,' " can be otherwise sustained. First, testimony about activities for which the witnesses have already been prosecuted can be compelled because the doctrine of double jeopardy removes the threat of further prosecution.[7] Second, in the context of this case, testimony about matters covered in their grand jury testimony cannot be other than derivative of that testimony, and it is therefore immunized.
 
 
 22
 Focusing on the compulsion of testimony relating to their grand jury testimony, we recognize that if the witnesses had directly answered the questions asked of them in the depositions, without asserting their Fifth Amendment rights, their responses would not have been immunized. Even though their testimony may have been on subjects covered in the grand jury proceedings, it would not have been derived from those proceedings. See United States v. Kuehn, supra. But a court order compelling testimony on matters covered in the grand jury proceeding makes it clear that subsequent testimony will indeed be derivative. Since the grand jury testimony will be the touchstone by which the compelled civil testimony is elicited, the civil testimony will fall under the protective shield of the statutory immunization originally granted in the grand jury.
 
 
 23
 In this, our case is analogous to Appeal of Starkey, 600 F.2d 1043 (8th Cir. 1979). There, we considered another order compelling a witness' testimony in the same underlying civil proceeding as is now before us. We affirm the district court's order but limited it to compelling the witness to "answer only questions which are within the same time, geographical and substantive frame work as the (witness' immunized) grand jury testimony." Id. at 1048. We think the testimony of Proctor and Lynn should be compelled under similar guidelines.
 
 
 24
 The only distinction between the posture of the witnesses in this case and that of Starkey is that Starkey's immunized grand jury testimony had been previously released and all parties had access to it. The ready availability of Starkey's grand jury testimony, however, merely made the task of confining his deposition to the protected subjects easier. Here, if disputes should arise about whether particular lines of inquiry were covered in the grand jury, the district court has the power to resolve them by in camera reference to the immunized testimony.[8] It should also be noted that the witnesses are likely to remember the nature of their grand jury testimony in significant detail and can, by honest responsiveness, make the process a smooth one.
 
 
 25
 It may be argued that our analysis, no less than the district court's, constitutes an impermissible judicial grant of immunity. A similar argument was made in Starkey where we agreed with the proposition that courts should not interfere with the prosecutor's discretion in matters of immunity. Appeal of Starkey, supra, 600 F.2d at 1047. We concluded, however, that the court there was not creating an immunity but was merely fulfilling its duty to identify the derived use of already immunized testimony. Id. at 1048. Here, we are doing little more. We are only authorizing the parties to use the immunized grand jury testimony as their standard and are compelling responses only to questions that are within "the same time, geographical and substantive frame work as the grand jury testimony." Id. We are thus providing immunity only in the sense that we are allowing the parties to obtain derivative, and thus immunized, use of undisclosed and previously immunized testimony. The source of this immunity is not the court but the prosecutor. We thus do no more than is done by the courts when they release previously secret grand jury proceedings, a function admittedly within our power. See Fed.R.Crim.P. 6(e)(2)(C)(i); Douglas Oil Co. v. Petrol Stops Northwest, 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979).
 
 
 26
 For the reasons expressed, and not in reliance upon the letter of prosecutorial intent, we affirm the district court's order compelling Lynn and Proctor to testify. The scope of their compelled testimony is "all matters pertaining to 'activities in the dairy industry in Arkansas for which they were prosecuted in United States v. Borden, Inc., et al., (LR-CR-77-60), or concerning which they testified before the June 1978 grand jury in the Eastern District of Arkansas.' " Order of May 18, 1979, slip op. at 17. This case is remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The District Court for the Eastern District of Arkansas, Judge Eisele presiding
 
 
 [2]
 The case was consolidated with a separate antitrust suit brought by three school districts and a civil action brought by the federal government. The latter action has been settled with the entry of a consent judgment
 
 
 [3]
 The district court's order in this case presented a new standard by which the validity of Fifth Amendment claims could be judged. That standard was rejected on appeal. See In re Folding Carton Antitrust Litigation, 609 F.2d 867, 871 (7th Cir. 1979)
 
 
 [4]
 At the district court's request, the federal government disclosed that Proctor's grand jury testimony covered the time period to June, 1976, and Lynn's covered the period to June, 1978
 
 
 [5]
 The district court defined the "controlling question to which there is substantial ground for difference of opinion" as follows:
 Does a statement of prosecutorial intention by an officer of the agency authorized by law to conduct grand jury proceedings and engage in general criminal enforcement of the federal antitrust laws that a witness will not be prosecuted for certain defined activities, when relied upon by a court of competent jurisdiction in compelling that witness to testify, confer de facto transactional immunity for the defined activities?
 
 
 [6]
 In Zicarelli v. Investigation Comm'n, 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972), the Supreme Court said that the Fifth Amendment's protection is afforded against "real dangers, not remote and speculative possibilities." The method by which to identify "real dangers" is not yet entirely settled. See In re Folding Carton Antitrust Litigation, supra. Since the order compelling testimony in this case applies only to testimony for which there is no danger of prosecution, the standard for determining real danger is not at issue
 
 
 [7]
 In Reina v. United States, 364 U.S. 507, 81 S.Ct. 260, 5 L.Ed.2d 249 (1960), the Supreme Court acknowledged the "ordinary rule * * * * that once a person is convicted of a crime, he no longer has the privilege against self-incrimination as he can no longer be incriminated by his testimony about said crime * * *." Id. at 513, 81 S.Ct. at 264. In Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), however, the Court concluded that the Fifth Amendment privilege could be validly asserted by a witness faced with questions "about the circumstances surrounding his arrest and conviction (on a guilty plea) for pool selling," id. at 12, 84 S.Ct. at 1496, if "it was 'evident from the implications of the question(s), in the setting in which (they were) asked, that a responsive answer to the question(s) * * * might be dangerous because injurious disclosure could result.' " Id. at 14, 84 S.Ct. at 1497 (quoting Hoffman v. United States, 341 U.S. 479, 486-487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951)). See also United States v. Yurasovich, 580 F.2d 1212 (3d Cir. 1978). Thus, questions concerning the conduct encompassed by the witnesses' prior convictions, if not also covered in their immunized grand jury testimony, must be judged by the Malloy/Hoffman standard
 
 
 [8]
 It may be suggested that the practical effect of our holding is to destroy the secrecy of the prior grand jury proceedings in violation of the district court's determination that disclosure was not justified by the state's showing of need. In its May 18, 1979, order, the district court specifically rejected Arkansas' contention that Lynn's and Proctor's grand jury testimony should be released so that the state might then obtain a Starkey order compelling their testimony in the civil case. See Order of May 18, 1979, slip op. at 6. It concluded that the "interests protected by the tenets of grand jury secrecy are far broader than the 'need' of the civil party ((the state)) in this case for discovery." Id. It recognized, however, that the state's showing of need was undercut by the court's finding of a de facto grant of transactional immunity. Id. Indeed, that need was totally dissolved by the court's order. Further, the district court's order compelling testimony about all matters "concerning which (the witnesses) testified before the June 1978 grand jury * * *," carried with it the same potential for divulging grand jury testimony as does our own analysis