**Sarah J. MALINICH, Special Administratrix of the Estate of Michael Malinich, Jr., Deceased, Plaintiff,**

v.

**TOYOTA MOTOR COMPANY, LTD., a foreign corporation; Toyota Motor Distributors, Inc., a foreign corporation; and Toyota Motor Sales, U.S.A., Inc., a foreign corporation, Defendants.**

**Civ. No. H 83–602.**

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 21, 1986.

Thomas R. Challos, Jr., Chicago, Ill., Charles L. Zandstra, Highland, Ind., for plaintiff.

---

Robert T. O'Donnell, Nicholas H. Diacou, Jeffrey Singer, Chicago, Ill., Eric L. Kirschner, Hammond, Ind., for defendants.

## ORDER

ANDREW P. RODOVICH, United States Magistrate.

This matter is before the Court on the Motion to Compel Answers to Questions Asked Upon Deposition by Oral Examination filed by the defendants, Toyota Motor Company, Ltd., Toyota Motor Distributors, Inc., and Toyota Motor Sales, U.S.A., Inc., on January 27, 1986. For the reasons set forth below, the motion is DENIED.

On October 3, 1981, Michael Malinich, Jr. and Walter Gottlieb Steiner were involved in a traffic accident in Lake County, Indiana. Malinich received fatal injuries in the traffic accident. An investigation into the accident revealed that Steiner's blood alcohol level was .12, and Steiner was charged with driving under the influence,[1] a misdemeanor, in the Lake County Court. The matter was referred to the grand jury to determine whether felony charges should be brought against Steiner. When the grand jury refused to return an indictment, the misdemeanor charge was dismissed.

On September 28, 1983, the plaintiff, Sarah J. Malinich, filed an action against the defendants alleging that the Toyota Corolla which her husband was driving was defective, unreasonably dangerous, and "uncrashworthy." (Complaint, Rhetorical Paragraph 11) On October 24, 1984, the defendants attempted to take the deposition of Steiner. Steiner appeared with his attorney and invoked his Fifth Amendment privilege with respect to any questions dealing with the accident itself or anything which occurred immediately before or after the accident. Exhibit A, attached hereto, contains the questions which Steiner refused to answer.

In general, the defendants contend that Steiner is not entitled to claim his Fifth Amendment privilege since there is no

bona fide risk of further prosecution. In the alternative, the defendants contend that Steiner's claim of the privilege is overbroad and that many of the questions should be answered since they do not incriminate him directly.

■ A witness in a civil proceeding is entitled to assert his Fifth Amendment privilege. In *Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1971) the Supreme Court discussed this privilege and stated:

> But the power to compel testimony is not absolute. There are a number of exemptions from the testimonial duty, the most important of which is the Fifth Amendment privilege against compulsory self-incrimination. The privilege reflects a complex of our fundamental values and aspirations, and marks an important advance in the development of our liberty. It can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory; and it protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used. This Court has been zealous to safeguard the values that underlie the privilege. (Footnotes omitted)

406 U.S. at 444–45; 92 S.Ct. at 1656. See generally: *In Re Corrugated Container Anti-Trust Litigation,* 661 F.2d 1145, 1154 (7th Cir.1981); *In Re Corrugated Container Anti-Trust Litigation,* 655 F.2d 748, 750 (7th Cir.1981); and *U.S. v. Cappeto,* 502 F.2d 1351, 1357 (7th Cir.1974).

■ To come within the protection of the privilege, it is not necessary that the answer, by itself, directly incriminates the witness. In *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975), the Supreme Court stated:

> The protection does not merely encompass evidence which may lead to criminal conviction, but includes information which would furnish a link in the chain of

---

1. Ind.Code 9–4–1–54. Under Ind.Code 9–4–1–54(g)(1) a blood alcohol content in excess of .10 "constitutes prima facie evidence" of intoxication.

evidence that could lead to prosecution, as well as evidence which an individual reasonably believes could be used against him in a criminal prosecution. 419 U.S. at 461, 95 S.Ct. at 592.

See also: *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1950).

■ Although the Fifth Amendment privilege "protects against real dangers, not remote and speculative possibilities," *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1675, 32 L.Ed.2d 234 (1972), a witness may claim the privilege as long as criminal prosecution remains a "possibility." *In Re Corrugated Container, supra,* 661 F.2d at 1150. In the case of *In Re Folding Carton Anti-Trust Litigation,* 609 F.2d 867 (7th Cir.1979), the Court of Appeals stated:

> In compelling [the witness'] testimony the district court charted its course ... because it perceived a need for courts to forestall the ability of a previously convicted civil deponent to limit the conduct of discovery. However real that need, and however much we appreciate the legitimate practical concerns of the trial court, we cannot agree that a witness' constitutional privilege against self-incrimination depends upon a judge's prediction of the likelihood of prosecution. Rather, we conclude that it is only when there is but a fanciful possibility of prosecution that a claim of fifth amendment privilege is not well taken. (Citations omitted) When a witness can demonstrate any possibility of prosecution which is more than fanciful he has demonstrated a reasonable fear of prosecution sufficient to meet constitutional muster.

609 F.2d at 871.

One of the factors which must be considered in determining whether a witness has a reasonable fear of prosecution is whether the state statute of limitations has expired. *Id.*

**2.** Ind.Code 9–4–1–54(b).

**3.** Ind.Code 35–42–1–5.

■ Under Indiana law, an individual involved in a fatal traffic accident may be charged with causing death while driving under the influence [2] or reckless homicide.[3] Both offenses are felonies which may be prosecuted within five years.[4] Therefore, at the time of his deposition Steiner was exposed to the possibility of prosecution by the State of Indiana. That threat of prosecution will exist until October 3, 1986.

In any state prosecution for a vehicular homicide, it would be important to know Steiner's whereabouts for several hours prior to the accident, his possession or ownership over one of the vehicles involved, the traffic and road conditions immediately prior to the accident, the facts surrounding the collision, and any potential witnesses to the accident. Although providing answers to some of the questions propounded by Toyota would not establish directly that Steiner was responsible for the death of Malinich, that evidence, and possibly evidence derived therefrom, might establish a link in the chain of prosecution. Therefore, Steiner was entitled to claim his Fifth Amendment privilege at his deposition.

For the foregoing reasons, the Motion to Compel Answers to Questions Asked Upon Deposition by Oral Examination filed by defendants Toyota Motor Company, Ltd., Toyota Motor Distributors, Inc., and Toyota Motor Sales, U.S.A., Inc., on January 27, 1986, is DENIED.

### EXHIBIT A

1. Directing your attention to October 3, 1981, can you describe for the record the kind of automobile you owned at that time?

2. Did you own a 1974 Buick Electra 225?

3. When did you purchase the 1974 Buick Electra 225 that you owned on October 3, 1981?

4. Do you still own the 1974 Buick Electra 225 that you owned on October 3, 1981?

**4.** Ind.Code 35–41–4–2(a)(1).

5. Prior to October 3, 1981, other than ordinary maintenance on the 1974 Buick Electra 225 that you owned, have you ever had any major repairs done to that automobile?

6. If you have disposed of the 1974 Buick Electra 225 that you were driving on October 3, 1981, when did you dispose of it and how?

7. And if you have disposed of the 1974 Buick Electra that you were driving on October 3, 1981, to whom or what entity did you sell it or give it to?

8. What kind of automobile do you own?

9. Are you presently driving an automobile different from the 1974 Buick Electra 225 that you were driving on October 3, 1981?

10. Can you tell me where the accident that occurred on October 3, 1981 happened?

11. Can you describe for me the surface of the road on which the accident that occurred on October 3, 1981 happened?

12. Just so the record is clear from here on forward, I'll simply be referring to the accident—the accident I'll be referring to is the one that happened on October 3, 1981, just so the record is clear. Did the accident that occurred happen on Highway 330?

13. Prior to October 3, 1981, had you ever driven Highway 330 before?

14. If so, can you tell me how frequently you had driven that highway before October 3, 1981?

15. In which direction were you traveling when the accident occurred?

16. Can you tell me the weather conditions the evening of October 3 or the day of October 3, 1981, when the accident occurred?

17. Can you tell me where you were the evening of October 2, 1981?

18. Can you tell me the speed limit on Highway 330 in the location where the accident occurred?

19. On October 3, 1981, were there any streetlights on Highway 330?

20. In your experience, assuming you have traveled Highway—had traveled Highway 330 prior to the date of the accident, was it your experience that the speed limit was honored by those that traveled that road?

21. If not, can you tell me the speed by which persons customarily traveled on that road?

22. Do you know what kind of car the other driver was driving on October 3, 1981?

23. Did you ever have occasion to see the other vehicle after the accident occurred, even that evening or thereafter?

24. Immediately after the accident occurred on October 3, 1981, can you describe for me the location of where your vehicle came to rest?

25. Did your vehicle come to rest on or off the road?

26. Can you describe for me where the Malinich Toyota came to rest after the accident?

27. Did you go over to the Malinich Toyota at any time between the occurrence of the accident and the time that automobile was taken away from the scene of the accident?

28. Did you see Mr. Malinich at any time after the accident—between the time the accident occurred and until he was taken away in an ambulance?

29. Can you describe for me the condition of Mr. Malinich as you saw him?

30. To the best of your knowledge, was Mr. Malinich alive when you saw him?

31. Can you tell me if he said anything or attempted to say anything to you?

32. Can you tell me who if anyone else was with you when you saw Mr. Malinich?

33. Can you tell me what, if anything, you did to assist Mr. Malinich?

34. Did you speak with anyone at the accident scene after the accident occurred?

35. If you did speak to anyone, I would ask that you identify that person and what the substance of that conversation was.

36. Do you know if Mr. Malinich was wearing a seatbelt or shoulder harness at the time the accident occurred?

37. And by that, I mean did you see him wearing a seatbelt when you left your vehicle and went over to his vehicle?

38. Have you given any statements to anyone with respect to the accident that occurred on October 3, 1981, other than your attorney, Mr. Dywan?

39. And if you gave such statements to anyone, I would ask that you tell me when the statement was given and to whom it was given.

40. Have you ever made/given a statement to any insurance company whether it be yours or some other insurance company?

41. Mr. Steiner, did you give a statement on February 25, 1982?

42. I think the pending questions, and I'll rephrase it, Mr. Steiner, on February 25, 1982, did you give a statement to an attorney or attorneys at the Whitted & Buscio law firm?

43. Back to the evening of October 2, 1981, did you have any passengers in your automobile, either that evening or early in the morning of October 3, 1981?

44. And had you been allowed to answer that question and had you indicated you did have a passenger, I would ask you the name of that passenger and where that person is today, if you know?

45. Directing your attention to October 2, 1981, did you work that day?

46. If so, can you tell me the hours you worked that day?

47. What time did you get off of work?

48. Mr. Steiner, I'm going to show you and your attorney, first, a photograph taken by the Lake County Police Department on October 3, 1981, of a vehicle. My question to you is, is that the vehicle you were driving on October 3, 1981?

49. Your present automobile now, do you have Indiana license plates or Illinois license plates?

50. As to your present automobile now?

51. Is that the resting place of your automobile on October 3, 1981, after your collision with the Malinich vehicle?

52. I'm going to show you a photograph, I'll first show it to your attorney, marked as Defendant's Exhibit No. 2, which is a photograph taken by the Lake County Police Department on October 3, 1981.

My question to you is, does that photograph accurately depict the final resting places of your vehicle and the Malinich vehicle after the accident?

53. And just so the record is clear, if you were to answer any question with respect to this photograph, I would ask you to tell me what you did in relation to this photograph after the accident, how you went over to the Malinich vehicle, how you approached the Malinich vehicle, where you approached it, how long you were there and what you did thereafter?

54. By using this photograph, on the evening of October 2, 1981, did you have a date with a woman by the name of Felicia?

55. And had you answered yes, I would ask you her last name as well as where she is, where she presently is today.