KEVIN RYAN MOSLEY,                )
                                  )
        Petitioner/Appellant,     )
                                  )   Appeal No.
                                  )   01-A-01-9604-CH-00162
VS.                               )
                                  )
                                  )   Davidson Chancery
                                  )   No. 95-3185-I
TENNESSEE BOARD OF PAROLES,       )
et al.,                           )
                                  )
        Respondent/Appellee.      )

FILED

November 1, 1996

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF DAVIDSON COUNTY
AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

KEVIN RYAN MOSLEY
N.C.S.C. 134663
7466 Centennial Boulevard
Nashville, Tennessee 37209-1052
        Pro Se/Petitioner/Appellant

CHARLES W. BURSON
Attorney General and Reporter

PATRICIA C. KUSSMANN
Assistant Attorney General
404 James Robertson Parkway
Suite 2000
Nashville, Tennessee 37243
        Attorney for Respondent/Appellee

AFFIRMED AND REMANDED

BEN H. CANTRELL, JUDGE

CONCUR:
TODD, P.J., M.S.
KOCH, J.

# **O P I N I O N**

Kevin Mosley, a prisoner in the custody of the Department of Correction, was twice considered for parole. On each occasion the Parole Board declined to release him, citing as its reason the seriousness of his offense. Mr. Mosley filed a Petition for Certiorari with the Chancery Court of Davidson County, contending that he was entitled to a more definite statement of the Parole Board's reasons. The prisoner also argued that the Board erred in failing to consider the results of a psychological study it had ordered. The Chancery Court dismissed the petition. We affirm the trial court.

## I.

The appellant was convicted of burglary and aggravated robbery and was sentenced to fifteen years, with eligibility for parole after he had served 30% of his sentence. On May 19, 1993 he was granted his first parole hearing. The Board of Paroles denied him parole because of the seriousness of his offense, and scheduled the next parole hearing for May 1995. However, in May 1995 the Board continued the hearing in order to obtain a psychological evaluation of the prisoner.

According to Mr. Mosley, he has been a model prisoner, and he had been told that a positive prognosis by the psychologist would be the decisive factor as to the grant or denial of parole. The Board-appointed examining psychologist allegedly determined that no further psychological counseling was needed in order for him to be released on parole. However on September 15, 1995, the Board denied him parole. Apparently the Board used the standard form to report its action, simply entering the initials "SO" on the form to indicate that the reason for declining Mr. Mosley was the seriousness of his offense.

Mr. Mosley submitted a Petition for Certiorari to the Chancery Court of Davidson County, arguing that the Board of Paroles had denied him due process, and had acted in an arbitrary and capricious manner by using a boilerplate reason to deny him parole without offering any further explanation, and by ignoring the results of the psychological evaluation that the Board itself had ordered. The Chancery Court dismissed the petition for failure to state a claim upon which relief can be granted. This appeal followed.

## II.

We begin, as we must, with the observation that the avenues of redress available to a prisoner who believes that the Board of Paroles has erred in declining to grant him parole are very limited.

The United States Supreme Court has ruled that a prisoner has no right under the United States Constitution to be released on parole prior to the expiration of a valid sentence. *Greenholtz v. Inmates of the Nebraska Penal and Correction Complex*, 442 U.S. 1, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668 (1979) (Marshall J., dissenting). The Tennessee parole statute, Tenn. Code Ann. § 40-35-503(b) states in part that "[r]elease on parole is a privilege and not a right."

In Tennessee, the grant of parole is a discretionary matter vested exclusively in the Board of Paroles. *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (1960). Also, decisions of the Board of Paroles, unlike those of most other administrative agencies, are not subject to judicial review under the Administrative Procedures Act. See Tenn. Code Ann. § 4-5-106(c).

However we have previously held that the Board of Paroles is not totally immune from judicial scrutiny. See *Powell v. Parole Eligibility Review Board,* 879

S.W.2d 871 (Tenn.App. 1994). While the intrinsic correctness of the Board's decisions is beyond the scope of judicial review, a Writ of Certiorari gives the court the right of inquiry into the question of whether the Board is exceeding its authority, or is acting illegally, fraudulently or arbitrarily. 879 S.W.2d at 873.

### III.

The appellant has submitted a well-written pro-se brief in which he correctly acknowledges the inherent limitations of any challenge to the actions of the Board of Paroles. However, he insists that his rights to due process entitle him to receive a more definite statement of the reasons for the parole board's decision to decline to grant him parole, and of the evidence the board relied upon.

In support of this proposition, Mr. Mosley cites numerous cases from different federal jurisdictions, where the courts have said that such a statement was a component of minimum due process in parole decisions. All of the cases cited by Mr. Mosley precede the *Greenholtz* case, supra, which established that determinations concerning release on parole do not directly implicate any due process rights under the United States Constitution, but are matters properly to be decided on the basis of the law of the jurisdiction in which they arise. No cases are cited which address the question of whether a petitioner is entitled to such relief under Tennessee law.

For example, the appellant quotes extensively from *Wagner v. Gilligan,* 425 F.Supp. 1320 (1979), an opinion involving the Ohio parole statutes. A portion of the quoted language is reproduced below:

> "It is obvious that the Authority's standardized reasons for denying parole provides no means by which the inmate or a reviewing body can ascertain whether the Authority's decision was rationally based on correct facts or any facts peculiar to the inmate. . . . The Court finds that the Authority must

> provide each inmate with the grounds for denial of his parole and the essential facts from which the Authority drew the inferences that led to its decision."

425 F.Supp at 1325.

However the Sixth Circuit Court of Appeals reversed the Ohio District Court's decision, in accordance with the *Greenholtz* opinion, supra, which was issued while *Wagner v. Gilligan* was on appeal. See *Wagner v. Gilligan,* 609 F.2d 867 (1979). Mr. Mosley insists, however, that only some aspects of the District Court's opinion were reversed by the Sixth Circuit, and that "a fair reading of *Greenholtz,* infra, does not hold that the parole board may deny parole simply on no reason, or by simply checking a form and stating that parole has been denied."

We believe, however, that the Sixth Circuit issued a blanket reversal of the lower court's holdings in *Wagner v. Gilligan*, and we do not see anything in *Greenholtz* that prevents a State from allowing its parole board to notify an inmate of its actions by checking a box or entering a few characters into a pre-printed form to indicate its reason for declining parole.

The *Greenholtz* court determined that the creation of a system of parole does not create a constitutionally protected liberty interest in early release on the basis of an inmate's hope or expectation of parole, unless the parole statute is drafted in such a way as to give rise to such an interest. Due process rights in parole determination proceedings are likewise derived from the parole statutes and rules themselves, and not directly from the Fifth and Fourteenth Amendments to the United States Constitution.

Having identified the source of any rights the Nebraska prisoners might have had in relation to parole decisions, the High Court proceeded to examine the argument that the inmates had been deprived of due process, in light of Nebraska's

- 5 -

parole statute. The Court found that the statute, as drafted, did create an expectancy of release that was entitled to some measure of constitutional protection, but also concluded that :

> "[W]e find nothing in the due process concepts as they have thus far evolved that requires the Parole Board to specify the particular 'evidence' in the inmate's file or at his interview on which it rests the discretionary determination that an inmate is not ready for conditional release. . . . To require the parole authority to provide a summary of the evidence would tend to convert the process into an adversary proceeding and to equate the Board's parole release determination with a guilt determination. . . ."

442 U.S. at 15-16, 99 S.Ct. at 2108, 60 L.Ed.2d at 680-81.

## IV.

Of course, the Supreme Court's interpretation of Nebraska law does not relieve us of the obligation to determine whether Mr. Mosley has received all the process to which he is entitled under Tennessee law. However we must first note that our courts have determined that current Tennessee law does not create a protected liberty interest in parole. *Wright v. Trammel*, 810 F.2d 589 (6th Cir. 1987), *Wells v. Board of Paroles,* 909 S.W.2d 826 (Tenn. App. 1995).

Secondly, the Board of Paroles is statutorily authorized to deny parole if release would depreciate the seriousness of the offense. Tenn. Code Ann. § 40-35-503. The Board has accordingly incorporated this provision into its criteria for granting or declining parole. Rules of the Board of Paroles No. 1100-1-1-.06(3)(b).

Although we have no way of knowing on the basis of this record the details of Mr. Mosley's offenses, it would be belaboring the obvious to state that aggravated robbery and burglary are both serious offenses. We also find nothing troubling in the concept that the Board might use that same reason to decline parole twice in succession, even though paroling a prisoner after his second hearing might

depreciate the seriousness of his offense less than paroling him at the first opportunity would.

As for Mr. Mosely's argument that without a more definite statement of the reasons for decline, he has no way of knowing how to conform his conduct to the requirements of the Board, we can only conclude that if he is indeed a model prisoner he already knows what is required, but that the passage of additional time may also be necessary, in order not to minimize the gravity of his crimes.

**V.**

Mr. Mosely also objects to the apparent failure of the Parole Board to give consideration to the favorable report of the psychologist regarding his mental state. The psychologist's report is not found in the record. However, even granting that it is as favorable as Mr. Mosley reports it to be, we believe the Board should be able to consult a psychologist or psychiatrist for assistance in determining the appropriateness of parole in a particular case, without surrendering its own power of decision to that consultant.

**VI.**

Mr. Mosley has failed to make a sufficient showing to enable us to conclude that the Board acted arbitrarily, fraudulently or illegally in declining him parole. The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____

                                                    BEN H. CANTRELL, JUDGE


CONCUR:                                  - 8 -



_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION



_____
WILLIAM C. KOCH, JR., JUDGE


CONCUR:                                  - 8 -